# Exhibit 1

Upon Roll Call — Barton, aye; Southwick, aye; Moses, aye; Collier, aye; Millane, aye; Kindel, aye; Sharpe, aye. Ayes, 7; Noes, 0. Approved.

A motion was made by Supervisor Sharpe, seconded by Councilman Collier, to approve the following resolution:

WHEREAS, The Town Board of the Town of Amherst, New York (Town Board) acting as Commissioners for and on behalf of Sanitary Sewer District No. 16, has applied for a construction grant from the United States Environmental Protection Agency (USEPA) and the New York State Department of Environmental Conservation (NYSDEC) for a project known as "The Youngs Road Interceptor and Collector Sewer Program for Southeast Amherst" Town Job No. 780202, also known as federal project number C-36-1225-02, and,

WHEREAS, under federal regulations, the Town Board is required to enact a fifty-year moratorium on development of properties which are located wholly or partially within state or federal designated wetlands and which are tributary to sanitary sewers in which there will be state or federal financial participation under this project number, and

WHEREAS, this moratorium on development must be enacted prior to the issuance of the construction grant.

NOW, THEREFORE, BE IT RESOLVED

THAT, the Town Board does hereby enact a fifty-year moratorium on development of properties which are located wholly or partially within state or federal designated wetlands and which are tributary to sanitary sewers in which there will be NYSDEC or USEPA financial participation under this project known as Federal Project Number C-36-1225-02, and

THAT, This fifty-year moratorium shall commence on the date that the grant agreement is executed by all concerned parties and shall terminate fifty consecutive years thereafter, and

THAT, the Town Board of the Town of Amherst reserves the right to appeal this moratorium with respect to actual wetland boundaries on an individual parcel basis.

Upon Roll Call — Barton, aye; Southwick, aye; Moses, aye; Collier, aye; Millane, aye; Kindel, aye; Sharpe, aye. Ayes, 7; Noes, 0. Approved.

The following Communications were received by the Town Clerk:

1. Petition from residents of Elmhurst Rd. re disturbances on adjacent lot. Referred to Town Board and Police Dept.

to the Town Board.

3. Letter from Michael E. Bogucki re a van parked on private property. Referred to Town Board, Building Dept. & Town Attorney.

4. Letter from Town of Clarence re a public hearing 7/20/83 for rezoning property at 5027 Transit Rd.

A motion was made by Supervisor Sharpe, seconded by Councilman Collier, that the Town Board has no objection to this rezoning.

Upon Roll Call — Barton, aye; Southwick, aye; Moses, aye; Collier, aye; Millane, aye; Kindel, aye; Sharpe, aye. Ayes, 7; Noes, 0. Approved.

5. Letter from Michael G. Wolfgang re Jackson Square Apartments. Referred to Town Board.

6. Note of thanks from William M. Belinson for remembrance plate. Received and Filed.

A motion was made by Councilman Collier, seconded by Councilman Southwick, to approve the following PUBLIC IMPROVEMENT PERMITS (applications):

1. #1514, SWS, Job 77-05, Green Tree Subdiv. Pt. V

2. #1515, PC, Job 77-05, Green Tree Subdiv. Pt. V

Adjourned: 10:10 P.M.
John R. Shearer,
Town Clerk
Town of Amherst,
Erie County, New York
july 27

# Exhibit 2

JAN-02-2002  12:00      USEPA R2 DEPP SPMMPB           1 212 637 3771     P.02/20

 **UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**

REGION II
26 FEDERAL PLAZA
NEW YORK, NEW YORK 10278

**12 JUL 1983**

To All Interested Government Agencies and Public Groups:

In accordance with the procedures for the preparation of environmental impact statements, an environmental review has been performed on the proposed agency action below:

| | |
|---|---|
| Project Name: | Southeast Amherst - Interceptor and Collector Sewer Project |
| Project Number: | C-36-1225-02 |
| Purpose of Project: | The proposed project will eliminate groundwater pollution from inadequate on-site septic system discharges within the southeast corner of the Town of Amherst. Wastewaters from the service area will be treated at the Town's existing advanced wastewater treatment plant with ultimate discharge to Tonawanda Creek. |
| Project Originator: | Town of Amherst |
| Project Location: | Town of Amherst, Erie County, New York |
| Project Description: | This abatement project is for the construction of approximately 18,276 meters (59,960 feet) of 20 centimeter (8 inch) collection sewers and 9,489 meters (31,132 feet) of 25 to 46 centimeters (10 to 18 inch) interceptor sewers, 4 pump stations, 2,687 meters (8,815 feet) of force mains and about 350 manholes. |
| Proposed Eligible Project Cost: | $7,963,540 |
| EPA Grant (75 percent) | $5,972,655 |

2

Our environmental review of this project indicates that no significant adverse environmental impacts will result from the proposed action. Consequently, we have made a preliminary decision not to prepare an environmental impact statement (EIS) on the project.

This decision is based on a careful review of the facility plan and supporting documents by the New York State Department of Environmental Conservation (NYSDEC) and the recommendations of the NYSDEC regional office. All of these documents, along with the environmental assessment, are on file at the EPA and the NYSDEC regional offices, where they are available for public scrutiny upon request. A copy of the environmental assessment is enclosed for your review.

Environmental review and certification of plans and specifications for the Step 3 construction phase of the project will be carried out by NYSDEC. An oversight review will be carried out by EPA to ensure compliance with federal regulations.

Comments supporting or disagreeing with this decision may be submitted to the EPA for consideration. All comments must be received within thirty (30) calendar days of the date of this finding of no significant impact (FNSI). Please address your comments to the Chief, New York/Virgin Islands Section, Environmental Impacts Branch, Room 400. After evaluating any comments received on the project, EPA will make a final decision. However, no administrative action will be taken on the project for at least thirty (30) calendar days after the date of this FNSI.

Sincerely yours,

Jacqueline E. Schafer
Regional Administrator

Enclosure

<u>ENVIRONMENTAL ASSESSMENT</u>

I. <u>Project Identification</u>:

| | |
|---|---|
| Project Name: | Southeast Amherst-Interceptor and Collector Sewer Project |
| Name and Address Of Applicant: | Town of Amherst 5583 Main Street Williamsville, New York  14221 |
| EPA Project Number: | C-36-1225-02 Step 3 Grant Application |
| Project Location: | Town of Amherst Erie County, New York |

II. <u>Description of Facility Planning Area</u>:

The planning area for this water pollution control project is within the Town of Amherst, Erie County, New York. Amherst is located adjacent to and northeast of the City of Buffalo, New York (see Figure 1). The Town of Amherst is primarily a residential community; its largest employer is the Amherst Campus of the State University of New York at Buffalo. Over the past decade it has been one of the fastest growing communities in the State. Its wastewater system has also expanded rapidly over the past decade and now includes approximately 618 kilometers (384 miles) of sanitary sewers and a 90,840 cubic meters (24 million gallons - MG) per day advanced secondary wastewater treatment plant.

The existing sewage treatment plant (STP) uses the pure oxygen activated sludge process for biological stabilization of wastes. Processed sludge is presently disposed of at the permitted Chaffee Landfill, although alternate uses and options are being investigated as part of a County Comprehensive Study (EPA project No. C-36-1288). The STP normally produces an effluent quality which meets discharge permit (SPDES) limitations. Independent of this project, however, the Town of Amherst is planning additional modifications of its system to improve performance during wet weather conditions. The environmental significance of these related projects is not considered herein but will be evaluated in separate assessments.

The specific planning area for the subject project includes primarily the southeast corner of the Town of Amherst, as shown on Figure 2. Southeast Amherst is the only large and heavily populated area within the Town which is not presently sewered. The Southeast Amherst Planning Area encompasses approximately 1,313 hectares (3,244 acres) which is about 9% of the total Town area. This area also contains roughly 650 residences and 1,725 people.

-2-

Between 1970 and 1980, the total Town population increased by about 18% to
102,689 people per census data.  The population growth projection of the
Statewide (208) Water Quality Management Plan for the Town is for a 6.5%
increase (over 1980 data) to the year 2000 or for a total population of
115,800 at that time.  Within the Southeast Amherst area, it is expected
that the population growth rate could be twice the Town average.  These
growth projections have been reviewed and accepted by the Erie and Niagara
Counties Regional Planning Board which is the local 208 planning agency.

Geology and soils were important considerations in planning wastewater
disposal facilities for Southeast Amherst.  The most prominent geological
feature is the Onondaga Escarpment, which runs generally in an east-west
direction, between Sheridan Drive and Main Street (NYS Rt. 5) in the
planning area.  The plain south of (above) the escarpment has shallow depth
to bedrock, high groundwater and soils of dry loam or loam with stone frag-
ments.  To the north of the escarpment, the depth to bedrock  varies between
ten and twenty feet.  The overlying soils are silty-sand and silty-clay
sediments with low permeability and have a seasonally high water table.  The
Southeast Amherst Planning Area is generally quite flat, with slopes less
than three percent.  Due to the flat topograph, surface drainage is generally
poor.  Although, in some areas, drainage is enhanced by the proximity of
jointed bedrock to the surface which allows rapid downward percolation of
storm runoff.  The combination of high groundwaters, poor drainage, and
slowly permeable soils contributes to the development of wetland vegetation
in numerous areas within the Town and three wetlands are located within the
planning area.

There are no major streams or surface drainage ways within the Southeast
Amherst Planning area.  Although most of the planning area is within the
watershed of Ellicott Creek to the west (refer to Figure 2), drainage from
the most northern portion is to Tonawanda Creek which forms the north boundary
of the Town of Amherst.

A Town Planning Board was established in 1949 and its first Master Plan was
published in 1955.  The present guidelines for development and zoning were
adopted in 1975-76.  Zoning has been based on a Land Use Plan which delineates
zones of various residential density, commercial, industrial, recreational,
and other uses.  Within the Southeast Amherst area the predominent zoned uses
are residential, community facilities (park, golf course, schools, churches),
research and development district (light industry), and commercial.  Develop-
ment status or actual usage, in contrast, can be characterized by the
following percentages of total area:  residential property 39%, fields 26%,
community facilities 13%, woods and wetlands 10%, commercial areas 7%, and
others 5%.

III.  Purpose and Need for Project:

At the present time, sanitary sewer service in the Southeast Amherst planning
area is limited to sewer connections for the Wehrle Industrial Park and Erie

-3-

Community College. Residents and businesses use a variety of on site waste-water disposal systems. These existing on site systems include conventional septic tanks with absorption fields in either natural soils or select fill, sand filter systems, and septic tanks with effluent discharged to ground water by bored holes. The adequacy of these systems is discussed below.

The Wehrle Industrial Park is presently served by a gravity collection system, a pump station, and a force main that discharges to a gravity sewer on Main Street, as shown on Figure 4. This connection was made as a temporary measure contingent upon completion of area wide planning. The existing routing of wastewater along Transit Road from the industrial park limits the capacity of those existing sewers to handle their design service area. The recommended project will restore capacity to sewers along Transit Road so that their design service area can be realized.

Erie Community College is presently connected to the Village of Williamsville sewer system through a pump station and force main. The Village sewers, which are tributary to the town STP, are undersized to handle existing wastewater quantities and at times overflow into Ellicott Creek. This overflow problem can be reduced by either modifying Village sewers, particularly the Ellicott Creek siphon, or by reducing the quantity of wastewater to be transported. (Independent of this proposed project, the Village of Williamsville is responsible for correcting and is evaluating the overflow problem.) The recommended project will reduce the flow to the Village of Williamsville system and provide reliable conveyance of wastewater from the college to the STP.

Direct discharges of septic tank effluent to the groundwater via bored holes or fractured bedrock are in violation of Erie County Health Department standards. Such discharges are difficult to detect but, none the less, con-tribute to groundwater pollution. In areas where the groundwater is used for drinking, direct discharges of septic tank effluent are a public health hazard. Within the Southeast Amherst area only one residence was noted as using groundwater for drinking. However, several residents have wells for lawn sprinkling and other uses which result in direct human contact. The recommended project will eliminate subsurface disposal of wastewater and thereby improve the groundwater quality.

Existing subsurface disposal systems in the study area generally do not function properly due to slowly permeable soils, the shallow depth to bedrock, and the seasonally high water table. The suitability of natural soils for absorption fields are depicted on Figure 3. Examination of County Health Department records for the area revealed that about 35% of the systems, for which information was available, had operational problems. Returns from a questionnaire sent to property owners confirmed the wide spread existence of problems with the operation of septic tank soil absorption systems. While there is an obvious bias in property owner surveys, approximately 29% of the returned questionnaires stated that problems had been experienced. After

-4-

eliminating duplicate information from the two sources of problem data, it was concluded that about 39% of the on site systems had problems.

The recommended project would remedy the current problems with on site systems by providing gravity sewers to transport area wastewaters for centralized treatment at the existing town STP.

IV.  **Detailed Description of Selected Plan:**

The recommended plan for providing reliable and cost-effective disposal of wastewaters in the Southeast Amherst planning area is to construct conventional gravity collectors which will connect to existing sewers in the town and convey wastes to the existing STP for treatment. The layout of the proposed sewer system is shown in Figure 4. Due to the flat terrain and high bedrock elevation in the area, the collectors will be installed at a shallow depth and four pump stations will be required. The predominant wastewater flow from the area will be conducted northward by a new interceptor line, located along Youngs Road, to the existing Peanut Line Interceptor.

With reference to Figure 4, wastewater flows from the side streets are routed to Wehrle Drive, Youngs Road, Main Street and Sheridan Drive generally following the slight natural slopes in each area. The flows are then picked up at the pump stations and directed to the north side of Main Street, west of Brompton Road, where they combine at an interceptor line. This interceptor flows by gravity to Sheridan Drive, then westerly to Young's Road, then north to the Peanut Line Interceptor.

The wastewaters from a small section of the study area will be directed to the existing Village of Williamsville sewers. Along Wehrle Drive, from a point about 732 meters (2400 feet) east of Youngs Road, and along Wilson Road the wastewaters will flow by gravity to the village system.

The recommended system consists of approximately 18,276 meters (59,960 feet) of 20 cm. (8 inch) diameter collector lines, 9,489 meters (31,132 feet) of 25 to 46 cm (10-18 inch) diameter interceptor sewers, 4 pump stations, 2,687 meters (8,815 feet) of force mains, and about 350 manholes.

V.  **Project Costs:**

The proposed project is for a complete system to collect and transport wastewaters from the southeast corner of the Town of Amherst to existing treatment facilities. The estimated total construction cost for the project, exclusive of homeowner connection expenses, is $10,036,000. The total present worth of

-5-

the project is $10,791,000 which includes capital costs, interest during construction, operation and maintenance cost, but excludes property owner connection expenses.

The Southeast Amherst Planning Area will become a part of Amherst Sewer District No. 16 and the local costs for the project will be borne by the entire District.  The existing assessment formula for Sewer District No. 16 is to base sewer charges on property owner's frontage, assessed evaluation and water consumption.  This formula also uses three rates depending on whether the property is "connected to sewer," has "access to sewer," or "no access to sewer available."  Representative costs due to the project and total annual service charges are shown below:

|  | 1982 Sewer Tax | Increase Due To Project | Total Annual Levy |
|---|---|---|---|
| Typical Residence* | $198.50 | $8.91 | $207.41 |
| Typical Vacant Lot** | $2.55 | $(-.03) | $2.52 |

*($10,000 assessed evaluation, 75 feet frontage, 90,000 gal/yr water consumption)

**($950 assessed evaluation, 75 feet frontage, no access to sewer)

Additionally, within the southeast Amherst service area, property owners will be directly responsible for a portion of the cost to install their individual house connection.  These house connections are not eligible for Federal or State aid.  The Town of Amherst has approved a plan to share the cost of these house connections.  The Town will construct, own, operate and maintain approximately one-half of the length for the required house connections.  Based on a typical house connection length of one hundred feet, the property owner would be responsible for fifty linear feet.  At an estimated cost of $21 per foot (due to rock excavation), the typical connection cost would be a one-time charge of $1,050.  Costs to abandon existing septic tanks have not been estimated and would be in addition to the above expenses.

## VI.  Evaluation of Alternatives:

As a part of the facilities planning process for the Southeast Amherst area, numerous alternative methods for meeting wastewater disposal needs were considered.  The major types of engineering alternatives considered were on site treatment systems, 3 options for centralized treatment, and 4 types of collection systems.  Within each of these major alternatives there were various

-6-

suboptions (e.g. 3 types of package treatment plants, 6 routings for gravity sewers) which are generally not considered herein. The conclusions of preliminary screening of alternatives were as follows:

A. The no action alternative was determined to be unsatisfactory because it would continue pollution of the ground water resource, pose a growing public health hazard to uses of this groundwater, and subject substantial numbers of local property owners to problematic operation of existing disposal systems. Over the short-term, it was believed that Health Department mandated corrections would reduce environmental degradation at a burdensome cost to individuals. Over the long-term, it was assumed that the cost and neighborhood disruption from reconstruction of individual systems would approach that of providing a reliable area wide remedy for wastewater disposal needs at the present time.

B. Comprehensive upgrading and replacement of on site systems was rejected as an impractical and uneconomical alternative. Based on extensive soils and bedrock investigations, it was determined that standard leach field designs would not work in the natural soils of the area. Septic tank and mound systems would not fit within developed lots in several neighborhoods; their use throughout southeast Amherst was considered not to be cost-effective and likely to aggravate existing drainage problems. Septic tank and sand filter systems were considered to be unfeasible due to poor area drainage. The costs to design and construct the most practical on site treatment system for each individual lot within the planning area was considered not cost-effective and the operation and maintenance of such a composite of various systems was regarded as potentially unmanageable.

C. After preliminary screening of alternatives, there were four viable methods for wastewater collection (i.e. gravity sewers, small diameter gravity sewers with septic tanks, low pressure sewers, and vacuum sewers) and three treatment methods (i.e. the existing Town STP, a new local STP, and land treatment by overland flow) to be considered. Twelve combinations of these systems were then comparatively developed so that costs along with social and environmental differences among these options could be evaluated. All 12 alternatives were compared on a present worth basis, taking into account all capital construction costs (including land acquisition), interest during construction, engineering design fees, contingencies, legal costs, operation and maintenance, equipment replacement and salvage. Costs for mitigation of adverse environmental effects, where these effects could be anticipated, were included as part of the capital costs of each alternative.

Based on this comparison, treatment of wastewaters at a local STP, regardless of the type of collection system, was the most costly option. The type of treatment system proposed was a bio-disc plant located south of Wilson Road and discharging to Ellicott Creek. The process train consisted of primary sedimentation tanks rotating biological contactors, polishing filters and

-7-

chlorine disinfection.  Advanced wastewater treatment including phorphorus removal would be necessary for this plant.  While a potential long-term benefit of stream flow augmentation might result from this alternative, it was rejected because it cost about 140-150% of the lower cost environmentally sound alternatives.

Likewise, land treatment alternatives cost about 120% of the least cost option and were rejected.  Land treatment by slow rate infiltration or rapid infiltration were judged unfeasible due to the low permeability of area soils. Preliminary designs for an overland flow treatment system were developed for the planning area using each of the collection system alternatives.  The only feasible location for this type system was east of Erie Community College and north of the industrial park due to the large area required.  Public acceptance of this location was considered to be a likely problem.  Land application systems located in cold climate zones must store wastewaters during the winter and most of spring.  The storage lagoons present a potential odor problem which must be overcome through increased operation and maintenance expenses.  Also, because of the present restrictions and health concerns regarding the use of cover crops grown on wastewater irrigated fields, the environemntal consequences of land application systems on long term productivity are questionable.  This alternative was, therefore, not selected due to costs and perceived public opposition.

The existing Amherst STP was designed and constructed with sufficient capacity to treat wastewaters from the entire town.  For this reason, because it is cost-effective and as a result of the preceeding decisions on alternatives, the recommended plan is to treat wastewaters from the Southeast Amherst area at the existing plant.  Further evaluation of collection system options was undertaken, as follows:

A.  Gravity sewers are the standard method for wastewater collection.  They can be used in most soil and climatic conditions.  The profile and depth of gravity sewers are controlled by the need to provide a slope sufficient to make them self-cleaning.  This slope requirement within the Southeast Amherst area makes gravity sewers a relatively expensive option, since the shallow depth to bedrock necessitates a large quantity of rock excavation during construction.  Also, the flat terrain throughout the planning area would require the construction of a number of pump stations for a gravity system.  Gravity sewers are normally built within road rights-of-way and thus require little land acquisition or change of land use.  They have minimal operation and maintenance costs as long as care is exercised during construction to insure water-tight connections.

B.  The collection system alternative with small diameter gravity sewers and septic tanks provides transport of wastewaters from the exit of individual septic tanks to the STP.  Due to the removal of solids by the tanks, smaller diameters and slopes can be used for sewer lines.  These factors enable construction of small diameter lines at shallower depths than

-8-

conventional gravity systems. Even so, in Southeast Amherst this system would require a considerable amount of rock excavation and the installation of several pump stations. Operation and maintenance costs for small diameter gravity systems are higher than for standard gravity systems because septic tanks require regular cleaning and the incidence of line clogging is greater.

C. The low pressure sewer alternative involves the use of grinder pumps located at each home or business to transport the wastes. Low pressure lines can be installed just below the frost line, thereby minimizing the required amount of rock excavation for the project area. Disruption of landscaping and vegetation is considerably decreased with this option because smaller and shallower trenching is needed for installation and the routing is more flexible. However, operation and maintenance costs are higher than for standard gravity sewers, since periodic overhaul and re-placement of pump units is necessary.

D. Vacuum sewers utilize a central vacuum station which pulls wastewater through collection lines to each house or business. Vacuum valves and holding tanks are provided for each connected building. When the holding tank is filled, the vacuum valve automatically opens to drain the tank. From the central vacuum station, wastewater is usually pumped to a gravity sewer or treatment plant. Vacuum sewer lines are similar to low pressure mains in their approximate size and installation characteristics. Likewise, the complexity of vacuum sewer systems makes their operation and maintenance requirements greater than that of standard gravity sewers and roughly equal to that of low pressure systems.

Cost estimates for the four types of collection systems, connecting to the existing STP, were within about 10% of each other. Therefore, differences other than economics were re-examined. It was decided that small diameter gravity sewers and vacuum sewers were more likely to have operational problems than either conventional gravity or pressure sewers. Also, because there is limited long-term maintenance experience for the former two of these systems, their estimated maintenance requirements were suspect. Lacking any clear advantages these systems were not recommended.

The grinder pump system appears to offer several environmental advantages over standard gravity sewers for the Southeast Amherst area. The relative advantages of low pressure collector sewers are the following:

a. Less environmental disruption during construction since the trench for installation is smaller and the routing can be more easily altered to avoid trees.

b. Lower quantities of extraneous water from inflow and infiltration enter the system requiring treatment.

-9-

c. Less likely to encourage or support new development in present open-spaces because sewer line capacity can be more closely matched to present needs.

For these reasons and assuming equal costs between alternatives, the grinder pump and low pressure collection system was initially recommended over gravity sewers. However, during engineering design of the proposed low pressure system, detailed information accumulated which caused the project alternatives to be reconsidered. More accurate bedrock elevations were provided by 251 soil borings. Surveys showed more detailed topographic features and house elevations needed to establish the slopes of collectors. House to house survey of electrical services revealed the extent of modifications necessary to connect grinder pumps.

The new physical data generally showed a greater depth to consolidate bedrock (previously the depth to fractured rock was used in calculations) and higher house elevations than were relied upon to compute quantities of rock excavation and the slopes of gravity collectors. The extent of electrical work necessary to service grinder pumps was considerably greater than previously estimated. These factors shifted the cost comparison in favor of standard gravity sewers. Based on the more reliable data, it was estimated that pressure sewers would have a present worth value about 8% greater than standard gravity sewers. Due to costs and the greater reliability of standard gravity sewers, they were recommended.

## VII. Environmental Consequences of the Selected Plan:

The probable impact of the proposed project can be evaluated on the basis of its affects on water resources, plant and animal communities, noise and air quality, population and land use, environmentally sensitive areas, and cultural resources.

A. Relevant Primary and Secondary Impacts of the Proposed Action

### Water Resources

The extension of gravity collector sewers from the Village of Williamsville and construction of new sewers is likely to have a negligible affect on surface waters of the area. Construction activity will not occur within or adjacent to continuously flowing streams of the area, except for Town drainage ditch 26B which is near the interceptor routing. Intermittent drainage swails may be subject to increased turbidity due to erosion from the sewer line trenching but this affect is considered short-term, not significantly detrimental, and controllable. The use of standard erosion control practices during construction and prompt site restoration, including revegetation, will minimize this affect.

-10-

Groundwater quality should be improved by the elimination of septic tank effluent discharges which will result from the project. This is considered a major long-term beneficial affect of the project.

### Plant and Animal Communities

The alignment of the proposed collector sewers is primarily within the road right-of-way. It is expected that most of the trees and shrubs encountered within the temporary work easements required for sewer line installation can be avoided. If small ornamental trees or shrubs within the work easement cannot be avoided, they will be either replanted or replaced as called for in easement agreements. However, the loss of vegetation on the permanent easements is considered a small but long-term detrimental impact of the project.

Impacts of collector sewer construction upon wildlife in the residential areas will be minor, highly localized, and short-term. Since the road right-of-way is subject to continuing traffic flow, it has a very limited value to wildlife. Disruption of this area for sewer line installation should not significantly affect wildlife.

At the north end of the Youngs Road interceptor sewer alignment, construction will occur within and adjacent to the large and significant Hopkins Road Wetland, as shown in Figure 5. While interceptor routes to avoid the wetland were considered, no economically acceptable alternative could be developed. The permanent easement for the interceptor will result in the loss of approximately 0.5 hectare (1.4 acres) of valuable wildlife habitat. This is a small but significant long-term adverse result of the project. (Further evaluation of this impact is presented under the heading of Wetlands.)

### Noise and Air Quality

As a result of construction activities, there will be a localized lowering of air quality and increase of noise levels. This will be primarily due to vehicle exhausts and dust from excavation. Dust will be controlled by street sweeping and sprinkling water as necessary. The use of calcium chloride or petroleum products for dust control will be prohibited. Blasting will be required for collector sewer installation. Noise and nuissance conditions during construction will be limited by routine vehicle maintenance and by restricting normal hours of work to the daytime.

The project area is in Erie County, New York, which is located within the Niagara Frontier Air Quality Control Region and the Niagara Frontier Air Quality Maintenance Area. Data from monitoring stations indicate that the

-11-

National Ambient Air Quality Standards (NAAQS) are being met with
the exception of ozone, total suspended particulates and carbon
monoxide.  A State Implementation Plan (SIP) has been prepared by
NYSDEC which provides measures for attainment and maintenance of the
NAAQA.  An analysis of the project has shown that the construction
and operation of gravity collector sewers will not, by itself, result
in the contravention of NAAQS.

## Population and Land Use

The population projections for the project area are essentially in
agreement with the areawide waste treatment management plan (the 208 plan).
In evaluating the wastewater flows from the project area, it has been
assumed that the current development rate within the area will accelerate.
It is expected that the installation of collector sewers in Southeast
Amherst will be an inducement to new development.  Population growth in
the area at about twice the rate of the entire town has been projected.
In planning for this new development the Town will install, at its own
expense, about 2,030 meters ( 6,660 feet) of gravity sewers beyond that
required to service existing area needs.  These non-grant eligible sewers
for minor existing wastewater disposal need and new development are located
primarily along Wehrle Drive,  Wilson Road and Sheridan Drive east
of Brampton Road.  Also, due to the relatively small flow
originating from some portions of the service area and the need to utilize
minimum pipe sizes and grades, the proposed gravity sewers will have capacity
in excess of that needed for existing development.

Development pressure could adversely affect existing land use patterns,
however, by following the existing zoning and building codes the Town of
Amherst has the ability to control new development and mitigate potentially
adverse consequences.

## Environmentally Sensitive Areas

Within the Southeast Amherst area there are no floodplains or agricultural
districts.  While some area soils are classified as prime for agriculture
no significant impact on agricultural resources will result from the
recommended project because these prime soils are not currently being farmed
and there are substantial obstacles to the return of farming.  Economic
disincentives to farming include present zoning and high land values, the
cost of reclaiming these areas to a tillable condition, and the present
subdivision of these areas into tracts too small for efficient farming.

## Wetlands:

As previously noted there are three wetland areas within the Southeast
Amherst planning area, as shown in Figures 4 and 5 . Two of these wetlands
along Wehrle Drive are small, totaling about 6 hectares (15 acres),
seasonally wet deciduous wooded wetlands.  Construction activity for the

-12-

recommended project will not occur within these wetlands.  Therefore
the project will not directly effect these two wetlands.  Indirectly,
the project could affect these wetlands by providing capacity for their
future development.  However, the smaller of these wetlands, about
2.5 hectares (6.2 acres), is located within the flight path of the
Buffalo International Airport.  Consequently, the Town of Amherst on
the recommendation of the U.S. Department of the Interior, Fish and
Wildlife Service - Division of Wildlife Assistance, and airport manage-
ment has agreed to eventually eliminate this wetland to reduce the
potential hazard of bird collisions with aircraft.  Also, the Town of
Amherst has agreed to mitigate potential negative secondary effects of
the sewer project on wetlands by prohibiting for 50 years new develop-
ment located in the Hopkins Road Wetland or the small wetland North of
Wehrle Drive, from connecting to the sewers funded in part by Federal
Grant.  Wetland maps identifying the boundaries of the areas to be
subject to tap-in restrictions were prepared, reviewed at a public hearing
and submitted as an addendum to the Facility Plan and Environmental
Information Document for the project.

As previously stated (refer to Plant and Animal Communities), the inter-
ceptor sewer for the Southeast Amherst area will be constructed through
the eastern edge of the Hopkins Road Wetland.  This construction and the
permanent easement for the sewer will result in the loss of approximately
one-half hectare (1.4 acres) of wetland.  As shown in Figure 5, three
alternative routes for the interceptor which would avoid wetland dis-
turbance were examined.  The cost of the alternative alignments ranged
from about 137% to 213% of the recommended route.  The primary constraint
in locating the Young Road interceptor was that a connection point had
been provided in the Peanut line interceptor sewer at the end of the pro-
posed Youngs Road extension.  The size of the Peanut Line Sewer is reduced
to the East of the connector stub and capacity is, therefore, not
available to the east.  Additionally, a water main was constructed
following along the East side of the proposed roadway extension.  This
water main makes routings to avoid the Hopkins Road wetland more difficult.

Because the alternative interceptor routings were significantly more
expensive and because the Town of Amherst is committed to extending Youngs
Road northward, the recommended sewer route, which is along the west side
of the proposed roadway extension, was selected.  An Interim Freshwater
Wetlands Permit for the recommended interceptor routing has been issued
by the New York State Department of Environmental Conservation.

-13-

In order to mitigate secondary growth impacts in the wetlands, the following grant conditions will be imposed:

a. The grantee has submitted to EPA and the State Department of Environmental Conservation an approvable facilities plan amendment including maps that clearly delineate all specific vacant parcels of land within the facilities planning area that are partially or wholly within wetlands as defined by the U.S. Fish and Wildlife Service. These maps must also show which parcels have been developed prior to date of issuance of Finding of No Significant Impact/Environmental Assessment (FNSI/EA).

*Where are maps ?*

b. The grantee agrees that for a period of 50 years from the date of the FNSI/EA no sewer hook-up or other connections to the wastewater treatment facilities included in the facility plan scope of this grant will be allowed or permitted so as to allow the discharge of wastewater from any building, facility or other construction on any parcel of land within any wetlands, which land parcel as of the date of the FNSI/EA was undeveloped (i.e. upon which no building, facility or other construction has been erected or placed) unless approved in writing by the Regional Administrator. This restriction shall not apply to waterfront recreation facilities such as marinas and boating facilities which by their nature must be on waterfront locations.

c. This condition is intended to benefit any persons or private organization or governmental entity which may have an interest in the avoidance of any future development in the designated areas. Any such beneficiary (who may otherwise have standing to seek enforcement and the right to begin such action in a court to competent jurisdiction) may seek to enforce compliance with this condition in the courts of the State or against the grantees or any non-federal person, organization, or entity subject to this condition if notice of intent to seek such enforcement is first given to the EPA Regional Administrator, the state environmental protection agency, the Grantee, and affected governmental entities and if none of those so noticed initiates corrective action within ninety days of such notice.

-14-

## Cultural Resource

In conformance with the procedures Advisory Council on the Historic
Preservation (ACHP) the EPA has investigated the project area to
identify if any cultural resources would be affected by the construction
of the proposed facilities. This cultural resource investigation
identified a prehistoric archaeological site, the Allen Site, within the
proposed project area. The EPA, with the concurrence of the NYSHPO, has
determined that the Allen Site meets the criteria for eligibility to
the National Register of Historic Places. EPA, with the concurrence of the
NYSHPO, submitted on May 4, 1983 a request to the ACHP for comment on EPA's
determination of no adverse effect. The no adverse effect determination
requires that a data recovery program be performed prior to construction
at the site. ACHP concurred with the recommended no adverse effect
determination and the data recovery program on May 13, 1983. EPA will
condition the Step 3 construction grant for the scheduling and completion
of required data recovery program. The final report of the archaeological
excavation and data analysis will be submitted one year after the
scheduled data recovery program is completed.

B.  Steps to Minimize Adverse Effects on the Environment

Prior to starting construction of the proposed facilities, the Town of
Amherst will be required to prepare construction plans, specifications,
and contract documents. These documents are subject to review and
approval by EPA and NYSDEC. They must contain specific measures and
proposals to mitigate potential adverse effects as identified in this
evaluation. The types of environmental protective measures have been
generally outlined in previous sections.

The plans, specifications, and other contract documents to be prepared
will include, at a minimum, specific items for controlling noise, dust,
odors, erosion, and stream impacts. Additionally, the Town of Amherst
must make grantee provisions for assuring maintenance of existing utility
services and safe travel routes (access) for emergency vehicles and
affected area residents.

Construction operations are proposed to be limited to daylight periods
in order to reduce noise nuisances to neighboring residents. Warning
signs, barricades, flashers, and other control measures will be employed

-15-

to safely redirect traffic around work areas. In-road trenches will be
backfilled or covered with steel plate at the close of each work day in
order to restore traffic on blocked roads. In addition, emergency services
will receive advance notice of road closings and measures, such as main-
taining on site steel plate and equipment capable of placing same, taken
to assure access by emergency vehicles to dead-end street locations.

In order to avoid accidental utility interruptions, service lines are
to be located and the utility given advance notice before excavating
in the vicinity of its lines. In instances of scheduled utility inter-
ruptions, all affected users will receive advance notice of the time and
duration of the interruption. Furthermore, work operations necessary for
the return of interrupted service will receive priority over other work
and will proceed expeditiously and continuously until completion.

Temporary storage and permanent disposal areas for excess spoil and
construction/demolition debris will be located at suitable locations --
not in wetlands, floodplains, lakes, or stream corridors. Construction/
demolition debris disposal sites are required to recieve New York State
approval prior to use.

Protection of roadside trees and ornamental vegetation will be required.
Clearing operations will be confined only to those areas where absolutely
necessary. Clearing will be limited to that right-of-way where construc-
tion will commence within thirty days. Restoration will begin as soon as
an area is no longer needed for construction stockpile or access. All
areas must be restored to at least as good a condition as existed prior
to construction. Sites for equipment, storing of materials, staging areas,
parking areas, field offices, and all related construction activities will
be prohibited from occurring in wetlands.

VIII. Coordination of Environmental Review and Reference Documents Consulted:

A. Public Participation Program

A full scale public participation program was conducted as part of the
facility planning and coordination efforts of the Town of Amherst. Two
public informational meetings were held to review project options being
considered. Three formal public hearings were held within the Town to
present for review the initially proposed grinder pump and low pressure
sewer alternative, wetland maps and the proposed restrictions on
connections from future development in wetlands, and the engineering
and environmental concerns which determined the subject gravity sewer
project. No substantial objections to the current project were raised
at the public hearings.

-16-

B.  Federal, State and Local Agencies Consulted on the Project

   Areas of Significant Input by Other Agencies

   The applicant and NYSDEC have provided assurance that the requirements
   of the New York State Environmental Quality Review (SEQR) Act have been
   satisfied.  Specific information is on file in the New York State Depart-
   ment of Environmental Conservaton Region 9 Office and in the office of
   the applicant.  This document is the statement of findings by the NYSDEC
   on the facility plan, its addendums, the joint Environmental Information
   Document and SEQR draft Environmental Impact Statement, supporting
   correspondence, and public hearing which constitutes the final SEQR
   Environmental Impact Statement.

   New York State Department of Environmental Conservation
   Division of Water and               Division of Regulatory Affairs
   Division of Regulatory Affairs      and Division of Water
   600 Delaware Avenue                 50 Wolf Road
   Buffalo, NY  14202-1073             Albany, NY  12233

   List of Other Agencies Consulted

   U.S. Environmental Protection Agency
   26 Federal Plaza
   New York, NY  10007

   U.S. Department of the Interior
   Fish and Wildlife Service
   One Gateway Center
   Newton Corner, MA  02158

   Erie and Niagara Counties Regional Planning Board
   3103 Sheridan Drive
   Amherst, NY  14221

C.  Reference Sources

   Wastewater Facilities Report for Southeast Amherst and Appendix (Oct. 1981)
   revisions dated August 1982, March 1983, by URS Company Inc. Buffalo,
   New York.

   Stage II Cultural Resource Investigation Southeast Amherst Planning Area
   (Feb. 1983) by Charles W. Baier Associates, Boston, New York.

   208 Water Quality Management Program (1978-79) by Erie and Niagara
   Counties Regional Planning Board.

   New York State Water Quality Management Plan (Jan 1981) Population
   Projections by NYSDEC.



Figure 1
General Location of Project Areas:
Western New York

**COUNTIES**
1  Niagara
2  Orleans
3  Erie
4  Genesee
5  Wyoming
6  Chautauqua
7  Cattaraugus

1

# Exhibit 3

TOWN OF AMHERST
PLANNING BOARD
ZONING RESOLUTION
Z-12-95

PETITIONER

GBC, Inc.
9220 Transit Road
E. Amherst, NY 14051

PROPERTY LOCATION

2220 Wehrle Drive

WHEREAS the Town of Amherst Planning Board on Thursday, May 18, 1995 held a public hearing on the proposed rezoning of land from R-3 to OB, and

WHEREAS the Planning Board has reviewed plans and other documents in support of the rezoning proposal, and

WHEREAS the documents and plans have been referred to the Town's various review agencies, and they have made findings on this project, and

WHEREAS the Planning Board finds that:

1.  The proposed Zoning and Development Plan does meet the intent and objectives of the Comprehensive Plan.

2.  The proposed rezoning is consistent with the intent and objectives of the Zoning Ordinance.

3.  Pursuant to Local Law #3-82, as amended, the Planning Board recommends that the Town Board determine that the requirements of SEQR are complete and that the subject proposal is not expected to have a significant adverse effect on the environment.

4.  Under Section 404 of the Clean Water Act, the US Army Corps of Engineers may have jurisdiction.

5.  Adequate services and utilities are or will be available.

ZONING RESOLUTION
Z-12-95

PETITIONER

GBC, Inc.

PROPERTY LOCATION

2220 Wehrle Drive

NOW THEREFORE BE IT RESOLVED that the Planning Board recommends to the Town Board in accordance with Part IX, Section 1-2.3 of the Zoning Ordinance, that the rezoning request be **approved** subject to the following conditions:

1.   That the mitigations recommended by the NYSDOT and the ECDPW be required.

The foregoing resolution was adopted by the

Town of Amherst Planning Board, May 18, 1995

Vern Anderson, Chairman

VWZ/d

cc:  Town Clerk
     Commissioner of Building
     Highway Superintendent
     Town Engineer
     Traffic/Safety Coordinator
     Petitioner

# Exhibit 4

## AMENDMENT OF ORDINANCE

*in comp. 4/21/00 SW*

Z-12-95

TAKE NOTICE that portion of Chapter Ten of the ordinance of the Town of Amherst known as the Zoning Ordinance and the Zoning or use map thereunder having to do with the Use District in which the hereinafter described property is located, be and the same are hereby altered and amended so as to change the use district from R-3 to OB for the following described property to wit:

ALL THAT TRACT OR PARCEL OF LAND situated in the Town of Amherst, County of Erie, State of New York and being part of Lot 105, Township 12, Range 7 of the Holland Land Survey so-called bounded and described as follows:

Beginning at a Point in the centerline of Wehrle Drive, at a distance of 150.0 feet easterly measured along the centerline of Wehrle Drive from the southwesterly corner of Lot 105;

THENCE, Northerly parallel with the west line of Lot 105, a distance of 1695.71 feet to the northwesterly corner of the lands conveyed to Willard Genrich et.al. recorded in Liber 8993 of deeds at Page 672;

THENCE, Easterly, parallel with the southerly line of Lot 105 and along the northerly line of the said Genrich et.al., a distance of 514.08 feet to the northeasterly corner thereof;

THENCE, Southerly along the easterly line of the said Genrich et.al., a distance of 1695.44 feet to the southeasterly corner thereof;

THENCE, Westerly along the centerline of Wehrle Drive, a distance of 497.80 feet to the Point of Beginning, containing 19.691 acres be the same more or less.

The foregoing ordinance was amended and/or altered as set forth by the majority vote of the Town Board of the Town of Amherst at a regular meeting held pursuant to law after due notice of the proposed amendment or alteration. Said meeting was held in the Amherst Municipal 4th day of December, 1995 at 7:30 o'clock P.M.

Susan K. Jaros, Town Clerk
Town of Amherst, Erie County
New York

Petitioner:  GBC Inc.

Address of Described Property:  2220 Wehrle Drive


RECEIVE D
APR 2 7 2000
TOWN OF AMHERST
PLANNING DEPT

Date Adopted:      December 4, 1995
Date Published:    April 19, 2000
Date Posted:       April 19, 2000

# Exhibit 5



**DEPARTMENT OF THE ARMY**
BUFFALO DISTRICT, CORPS OF ENGINEERS
1776 NIAGARA STREET
BUFFALO, NEW YORK 14207-3199

REPLY TO
ATTENTION OF:                    June 29, 2001

Regulatory Branch

SUBJECT: Department of the Army Application No. 2000-00680(0)


Mr. Wayne I. Eisenbaum
Aquest Development
Olympic Towers
300 Pearl Street
Buffalo, New York 14202

Dear Mr. Eisenbaum:

I am writing to you in regard to your application for a
Department of the Army permit to place fill in wetlands for the
construction an office park in the Ellicott Creek watershed,
located at Wehrle Drive, in the Town of Amherst, Erie County, New
York.

On January 9, 2001, the U.S. Supreme Court issued a ruling
that affected the Corps of Engineers authority to regulate
isolated, non-navigable, intrastate waters under the Clean Water
Act (Solid Waste Agency of Northern Cook County v. the U.S. Army
Corps of Engineers, No. 99-1178). Specifically, the case
involved statutory and constitutional challenges to the assertion
of Clean Water Act jurisdiction over isolated, non-navigable,
intrastate waters where use of the site by migratory birds
established the necessary interstate commerce connection. The
U.S. Supreme Court found that use of the site by migratory birds
alone is not sufficient to establish Federal jurisdiction over
isolated wetlands, and that such areas are not waters of the
United States and are not subject to regulation under Section 404
of the Clean Water Act.

In light of the recent Supreme Court decision, I have
reviewed various maps, historic aerial photographs and the
administrative record for the project. Based on this review and
my on-site observations, I have determined that the wetlands on
the subject project site are isolated, non-navigable, intrastate
waters that are not subject to regulation under Section 404 of
the Clean Water Act. Accordingly, you do not need Department of
the Army authorization to commence with work on the site.

However, in light of questions raised regarding the
previously affirmed wetland delineation for the project site,
especially as they pertain to potential ongoing U.S.
Environmental Protection Agency (USEPA) involvement with the

-2-

Regulatory Branch
SUBJECT:   Department of the Army Application No. 2000-00680(0)

project, I will comment on the results of the May 7, 2001
interagency site visit.   The purpose of this visit was to
evaluate the accuracy of the wetland delineation.   It appears
that the wetland delineation performed by Wilson Environmental
Technologies, Inc. in 1996 and verified by this office in
January, 1997, no longer accurately describes on-site conditions.
The site currently contains substantially more wetlands than
previously delineated.   Therefore, if USEPA requires an accurate
wetland delineation of the site based upon the 1987 Corps of
Engineers wetland delineation manual, USEPA may require that a
new wetland delineation be performed.

I encourage you to contact the appropriate state and local
governmental officials to insure that the proposed work complies
with their requirements.

A copy of this letter has been forwarded to: Mr. David
Pohle, Mr. Donald G. Wilson, Mr. Charles D. Cranston, Mr. Mark
Kandel, and Ms. Ann Suchyna.

Questions pertaining to this matter should be directed to
Steven V. Metivier at (716) 879-4314, by writing to the following
address: U.S. Army Corps of Engineers, 1776 Niagara Street,
Buffalo, New York  14207-3199, or by e-mail at:
steven.v.metivier@usace.army.mil

Sincerely,

Arthur K. Marks
Chief, New York Application
Evaluation Section

Exhibit 6



Town of Amherst Planning Department                    *Erie County, New York*



Susan J. Grelick
Supervisor

Eric W. Gillert, AICP
Planning Director

Gary Black, AICP
Assistant Planning Director

## SEQR
## NEGATIVE DECLARATION
## NOTICE OF DETERMINATION OF NON-SIGNIFICANCE

| | | | |
|---|---|---|---|
| **Lead Agency:** | Town of Amherst<br>Town Board | **Project:** | Proposed Office Park rezoning of 2190 Wehrle Drive and Development at 2190 & 2200 Wehrle Drive. |
| **Lead Agency Address:** | 5583 Main Street<br>Williamsville, NY 14221<br>(716) 631-7051 | **Date:** | December 17, 2001 |

The Lead Agency has determined that the proposed project (action) described below will not have a significant adverse effect on the environment.

**Title of Action:**  Rezoning of 2190 Wehrle Drive from R-3 to OB and Potential Development of 2190 & 2220 Wehrle Drive as an Office Park

**SEQR Status:**  Type I action.

**Description of Action:**  The action consists of the rezoning of 2190 Wehrle Drive (5.72± acres) from Residential District – Three (R-3) to Office Building (OB) and the potential development of 2190 and 2220 Wehrle Drive as an office park to include approximately ten (10) buildings and 1,000± parking spaces. The rezoning would permit the petitioner to provide a 50 ft. buffer along the east property line and limit building height to one storey on the east side of the proposed access road. The project also includes the creation of 13.5± acres of wetlands on property located on parts of Lots 52 & 53, Township 13, Range 7 in the Town of Amherst. This wetland is being created to satisfy the requirements of the US EPA relative to the application for a federal sewer connection waiver.

This action includes all discretionary approvals related to the rezoning of 2190 Wehrle Drive from R-3 to OB by the Amherst Town Board and site plan approval of the proposed office park by the Amherst Planning Board.

**Location:**  2190 and 2220 Wehrle Drive, Town of Amherst, Erie County

**Petitioner:**  Acquest Development Company and Niskayuna Square LLC

Negative Declaration -2190 & 2220 , ehrle Drive
December 17, 2001

This action has been classified as a Type I action in accordance with the requirements of 6 NYCRR Part 617.6. The Town Board as Lead Agency has completed its review of this action and has considered all of the evidence that contained information with respect to the potential environmental impacts of the project. The documentation that has been reviewed by the Town Board in reviewing this action and making a determination to issue a Negative Declaration is included below.

## Project History and Information Considered by the Lead Agency

- May 22, 2000 - application received for a public road to serve the proposed Wehrle Business Park (2220 Wehrle Drive; SP-16-00).

- June 29, 2000 - letter from the Erie County Department of Environment and Planning (ECDEP) to the Town stating that a full traffic impact study must be prepared for the project.

- July 20, 2000 - letter from ECDEP stating that the County agrees the Town should act as the lead agency for the project.

- August 7, 2000 - letter from Steven Doleski, Regional Permit Administrator at NYS DEC, stating that the DEC concurred with the Town acting as lead agency for the project, with the following comments as part of its review of the action pursuant to SEQR:

    1. The project site is not within a State Regulated Freshwater wetland.
    2. The project site has been identified to be within an archaeologically sensitive area as shown on maps issued by the New York State Office of Parks, Recreation and Historic Preservation (NYSOPRHP).
    3. If the project requires sewer extension approval, the Erie County Health Department will be the approving agency. The DEC also reminded the Town that a waiver would need to be obtained from the U.S. EPA to allow a sewer hook-up to the Youngs Road Interceptor and Collection Sewer Project.
    4. Since the project will impact five or more acres of soil disturbance, on-site stormwater discharge will be regulated by the DEC under the State Pollution Discharge Elimination System (SPDES) General Permit for Stormwater Discharge From Construction Activities.
    5. The off-site mitigation area for federal wetlands (east of Hopkins Road) is located within an archaeological sensitive area as shown on maps issued by NYSOPRHP. During the environmental review process, the Town of Amherst should also consider any impacts the proposed mitigation may have at this location.
    6. Application No. 9-1422-00337/00001 for the filling of federal wetlands remains incomplete until the Town issues a SEQR determination.

- August 17, 2000 - Petitioner submitted a letter requesting the Town Board to seek a tap-in waiver from the EPA and the DEC from the 50-year moratorium entered into between the Town and the EPA in 1983. By entering into this moratorium, the Town Board agreed to

Negative Declaration -2190 & 222ᴜ Wehrle Drive
December 17, 2001

prohibit sewer hook up or other connections from any parcel with any federal or state wetlands to the sewage treatment facilities covered by the grant unless a waiver was first obtained from the EPA.

- October 6, 2000 - meeting held at the Town of Amherst Planning Department to discuss the project. This meeting was attended by representatives of the Town Planning Department, the Project Engineer for the Petitioner, and the Petitioner's legal counsel. The Planning Department advised the Petitioner that more information would be needed on the potential traffic impacts associated with the project.

- November 13, 2000 - petitioner submitted a Long EAF and rezoning materials to rezone 5.72± acres of land at 2190 Wehrle Drive from R-3 to OB.

- November 15, 2000 - the Planning Department sent a copy of the Traffic Impact Study prepared by EMS Consulting Engineers to the NYSDOT, ECDPW and the Town's Traffic/Safety Coordinator.

- February 12, 2001 - Town Board voted to seek a Tap-In Waiver from the U.S. EPA for the sanitary sewer moratorium.

- February 12, 2001 – letter from NYSDOT stating the following comments on the Traffic Study conducted for the proposed rezoning:

    1. Concurrence with the Town as Lead Agency
    2. Development will be affected by Erie County highway project PIN 5755.19, Wehrle Drive from Youngs Road to Transit Road scheduled for summer 2004
    3. With the two planned NYSDOT construction projects planned in this vicinity (Main St. from Youngs to Transit Roads; Transit Road from I-90 to Main Street), the additional traffic generated by this development will not have a significant impact on the state highway system.
    4. NYSDOT Highway Work Permit will not be required

- May 7, 2001 -Town of Amherst Planning Department sent a request for re-establishment of lead agency (including amended long EAF and concept plan) to reflect the project change with the inclusion of the 5.72± parcel at 2190 Wehrle Drive. Lead Agency solicitation letters sent to DEC, ECDEP, ACOE, the Amherst Conservation Advisory Council, etc.

- June 6, 2001 – letter from DEC to the Amherst Planning Department in response to the Planning Department's request for lead agency re-establishment dated May 7, 2001, which included the following points:

    1. A DEC biologist had conducted a wetland delineation of the project site in accordance with NYS Freshwater Wetland Criteria. Two separate wetlands of 9.475± acres and 0.228± acres were determined to exist on the project site. The DEC also advised the Town that in accordance with Article 24 of the NYS Environmental

3

Negative Declaration - 2190 & 2220 Wehrle Drive
December 17, 2001

    Conservation Law, the wetlands did not constitute a "NYS Regulated Freshwater Wetland" and were therefore not subject to the DEC's jurisdiction.

2. The U.S. Army Corps of Engineers (ACOE) should be contacted to verify the existence of federal wetlands on the project site.

3. The project site appears to be situated in an archeologically sensitive area shown on the NYSOPRHP map. The Town was advised to have this concern evaluated with appropriate archaeological documentation provided prior to the DEC and/or the County Health Department issuance of any permits or approvals.

- July 10, 2001 – letter from ECDEP agreeing that the Town of Amherst should be the lead agency. ECDEP also recommended that the lead agency should thoroughly analyze the identified areas of environmental concern to determine if the action may have a significant effect on the environment.

- Written reviews of the proposed rezoning by Town departments: Assessor (11/14/00, 12/6/00), Commissioner of Building (11/16/00, 12/4/00), Highway (10/4/00), Traffic/Safety Committee (10/5/00) and Engineering (11/15/00, 12/11/00).

- The Town's Comprehensive Plan. In accordance with Town Law §272-a(2)(a), the Town's Comprehensive Plan means "the materials, written and / or graphic, including but not limited to maps, charts, studies, resolutions, reports and other descriptive material that identify the goals, objectives, principles, guidelines, policies, standards, devices and instruments for the immediate and long range protection, enhancement, growth and development of the town." In accordance with the statutory definition of a comprehensive plan, the Town Board has reviewed the 1975 Master (not adopted by the Town Board), and previous zoning decisions made by the Town in the vicinity of the subject parcel, and the Town's Zoning Code in issuing a Negative Declaration.

## Record of Public Hearing Process - Town Board and Planning Board

- <u>November 16, 2000</u> - Planning Board held a public hearing on the proposed rezoning of 2190 Wehrle Drive from R-3 to OB.

- <u>February 12, 2001</u> - Town Board held a public hearing on the issue of whether to seek a waiver from the U.S. EPA for the sanitary sewer tap-in. The Town Board considered the Petitioner's written request for a waiver and the supporting documentation, as well as the public comments made during the public hearing before making a decision to seek a waiver from the EPA.

- <u>March 15, 2001</u> - Town of Amherst Planning Board held a second public hearing on the proposed rezoning of 2190 Wehrle Drive from R-3 to OB. The Board made a favorable recommendation to the Town Board on the proposed rezoning, with the following conditions included in the Planning Board's written resolution dated March 22, 2001:

Negative Declaration -2190 & 2220 Wehrle Drive
December 17, 2001

1. That SHPO review be completed prior to final site plan approval.
2. That any concerns of Erie County relative to transportation be addressed at site plan review.
3. That the EPA waiver of the sanitary sewer moratorium be a condition of site plan approval.
4. That a federal jurisdictional wetland permit, if required, be granted by the US Army Corps of Engineers prior to final site plan approval.

- The Town Board held public hearings on the proposed rezoning of 2190 Wehrle Drive from R-3 to OB on the following dates: April 16, May 7 and June 18, 2001. A decision date of July 2, 2001 was set; however, on that date the Town Board voted to hold the decision.

- September 4, 2001 - Town Board tabled its decision on the rezoning of the 5.72± acre portion of the site (2190 Wehrle Drive) at the request of the Town Planning Department in order to allow the Petitioner to submit a Stage 1 Cultural Resource Investigation with respect to this portion of the site.

- November 15, 2001 – Town Planning Department advised the Town Clerk's office that the information needed for the Town Board to make a determination of significance on the action had been received. The Planning Department also advised the Town Clerk's office of the need for an additional public hearing based on the input received from the Town Attorney.

- November 19, 2001 - Town Board voted to schedule an additional public hearing on the proposed rezoning of 2190 Wehrle Drive in accordance with the written recommendation of the Planning Department dated November 15, 2001.

## Reasons Supporting This Determination

Based on a review of relevant evidence including, but not limited to, the Petition for Rezoning submitted by the Petitioner, Part 1 of the Long Environmental Assessment Form, comments made by the public and the Petitioner's representatives before the Planning Board and Town Board hearings, comments made by various Town agencies and departments, comments made by relevant County and State agencies (NYSDEC, NYSDOT, ECDEP), certain issues were raised as potential areas of environmental concern. The Town Board's reasoned elaboration with respect to these identified areas of environmental concern is as follows:

1.   **Impact on Land**

Construction of paved parking area for 1,000 or more vehicles: The Concept Plan prepared for the project site shows 1,007 parking spaces. The proposed parking spaces will have a permanent and irreversible impact since the portions of the project site proposed for parking will no longer be available for alternative uses and will likely remain paved for the duration of the park.

The overall parking requirements for the project site will be determined as the site is developed in accordance with the off-street parking requirements set forth in the Town of Amherst Zoning Ordinance.

Negative Declaration -2190 & 2220 Wehrle Drive
December 17, 2001

The Petitioner proposes to provide a minimum parking setback of 50 feet on the eastern portion of the project site, which is adjacent to single family homes that are zoned Residential District – Three (R-3). The subject zoning request would increase the OB-zoned area controlled by the petitioner, thereby allowing the increased parking setback of 50 feet. Previously, the Petitioner submitted a Site Plan application with a parking setback of twenty five (25) feet on the eastern portion of the project site, which is allowed in the Zoning Ordinance (§ 203-5-4-3.3). The Petitioner increased the setback in response to input received from the public during previous public hearings in order to increase the buffer between the proposed use and adjacent residential uses to the east.

During the site plan review stage, the Petitioner will be required to submit a Landscape Plan which will provide detailed information on the proposed landscaping including the size, description and location of all proposed landscape materials. The landscape plan will be reviewed by the Town's Division of Forestry, Planning Department and Building Department to ensure the plan complies with the Zoning Ordinance requirements and also to ensure the types of trees and vegetation proposed are appropriate to provide an effective buffer.

Construction that will continue for more than 1 year or involve more than one phase or stage: It is anticipated that the project site will be developed in three or more phases over a period of several years, potentially leading to impacts that are temporary yet unavoidable. Construction activities may temporarily generate noise that exceeds existing background levels, as well as dust during the periods when heavy construction equipment is utilized.

The impact of construction activities will not be permanent. The proposed 50-foot buffer on the eastern portion of the project site will provide mitigation for construction-related impacts to adjacent residential properties. The short term noise impacts will be mitigated by the timing of construction activities which take place during the daytime hours. The Town's Building Department will monitor construction activities and will require the Petitioner to control dust if needed.

2.    **Impact on Water**

Construction on area of site that contains non-jurisdictional United States Army Corps of Engineers ("ACOE") wetlands:  Based on determinations that have been made by both the United States Army Corps of Engineers (ACOE) and the New York State Department of Environmental Conservation (NYSDEC), the proposed action will not have an impact on any protected water body.

In May of 2001, representatives of the ACOE, U.S. Environmental Protection Agency (EPA) and NYSDEC visited the project site to evaluate the potential impact of the project on wetlands. This inspection allowed the involved agencies to evaluate the potential impact of the action on jurisdictional wetlands in a coordinated manner as encouraged by SEQR.

On June 29, 2001, Arthur K. Marks, ACOE's Chief of the New York Application Evaluation Section, submitted a letter to the Petitioners stating that wetlands on the project site were

Negative Declaration –2190 & 2220   ehrle Drive
December 17, 2001

"*isolated, non-navigable, intrastate waters*" and therefore not subject to federal regulation under Section 404 of the Clean Water Act. Mr. Marks' letter stated the determination had been made after the completion of a review of various maps, historical aerial photographs and the administrative record for the project.

Mr. Marks' letter also stated that the Petitioner can develop the project site without the authorization of the ACOE. However, based on the existing sanitary sewer tap-in restriction, Mr. Marks advised the Petitioner that the EPA may require an updated wetlands delineation for purposes of making a decision on the Town's request for a tap-in waiver. Subsequently, the Petitioner prepared an updated wetlands delineation which has been submitted to the EPA for their review in connection with the Town's tap-in waiver request.

After participating in the on-site meeting in May of 2001, a NYSDEC Biologist conducted a wetland delineation of the project site in accordance with NYS Freshwater Wetland criteria. After the delineation was completed and reviewed, the NYSDEC issued a determination that the project site does not contain any New York State protected wetlands. The NYSDEC made this determination after comparing its delineation to the thresholds set forth in Article 24 of the New York State Environmental Conservation Law. The NYSDEC's determination with respect to the issue of state wetlands is contained in a letter from Steven J. Doleski, Regional Permit Administrator, to the Town of Amherst Planning Department dated June 6, 2001.

Although there are not any wetlands on the project site that are subject to the jurisdiction of either the ACOE or the NYSDEC, the existing wetland areas are still a natural resource, and the Town needs to take the required "hard look" at the impact on the non-jurisdictional wetlands before making a determination of significance.

A Wetland Mitigation Report prepared by Wilson Technologies dated September 17, 2001 provides detailed information on two existing non-jurisdictional wetland areas on the project site that total approximately 7.15 acres. The size and federal designation of the non-jurisdictional wetlands are as follows:

| Wetland Area | Size (Acres) | Federal Designation | Wetland Cover Type | Value Index |
|---|---|---|---|---|
| A | 6.92± | PFO/SS-1E | Forested/Scrub-Shrub | Medium |
| B | 0.23± | PFO/SS-1E | Sapling/Scrub- | Low |

According to the Mitigation Report, each of the existing wetland areas appears to be seasonally saturated with no permanent open water habitat. The proposed office park will have a permanent impact on these non-jurisdictional wetlands, since the Petitioner is proposing to fill both of these areas. The filling of the existing non-jurisdictional wetlands will result in the permanent displacement of non-protected wildlife.

To satisfy the U.S. EPA's requirement to mitigate the filling of federal wetlands to issue a tap-in waiver, the Petitioner is willing to create wetlands on other property under their ownership east

Negative Declaration -2190 & 2220   ehrle Drive
December 17, 2001

of Hopkins Road in Amherst. The Wetland Mitigation Report sets forth the details of the
Petitioner's plans to create wetlands on this parcel.

The Petitioner has advised both the EPA and the Town of the plans to create approximately 8.31
acres of federal wetlands on the Hopkins Road parcel. This parcel is located in the same
watershed as the project site (Tonawanda Creek Watershed). The wetlands to be created will
consist of "robust emergent/open water, emergent, and wet meadow habitat in juxtaposition to an
existing wetland complex" (4.82 and 0.32 acre wetlands). The wetland areas that will be created
by the petitioner will provide a permanent habitat suitable for providing nesting, rearing and
forage for fisheries, waterfowl, American woodcock and wading birds.

Proposed action would use water in excess of 20,000 gallons per day: The proposed project will
potentially utilize more than 20,000 gallons of water per day. Although this impact is considered
large, the Town of Amherst has infrastructure that is capable of servicing the project's potential
demand for water. The Town Engineer's reviews received on 10/13/00, 11/01/00, 11/16/00 and
12/14/00 did not indicate any problems associated with the provision of water service. As the
site is being developed, the Petitioner will be required to submit site plan applications and the
required supporting documentation in accordance with the requirements set forth in the Zoning
Ordinance and New York State Town Law §274-a. During the site plan review stage, the Town
of Amherst Planning Department will seek the comments of all pertinent Town departments
including the Engineering Department. During the site plan review process, the Planning Board
can impose conditions in the highly unlikely event a determination is made the Town does not
have the capability to provide adequate water supply to the project site. The Petitioner would
then be required to address all such conditions prior to obtaining final site plan approval.

Proposed action would change flood water flows: The proposed project will create impervious
surfaces (e.g., parking areas, driveways, sidewalks, roof, etc.) on the project site that will
increase both the volume and rate of stormwater runoff from the site. Although this impact is
permanent, it is not considered potentially large due to the requirements for drainage and storm
water runoff that the Town of Amherst enforces. The enactment of stormwater runoff
requirements confirms that this area of environmental concern is important to the Town.

During the site plan review process, the Petitioner will be required to submit a professionally
prepared Drainage Report to the Town. The Town will require the Drainage Report to provide
detailed information on the manner by which the discharge of stormwater runoff will be
controlled. The Petitioner will not be issued a building permit until the Engineering Department
has reviewed the Drainage Report and verified the project will comply with the Town's
standards.

3.      Impact on Sanitary Sewer Capacity: The Town of Amherst Engineering Department
reviewed the project in order to analyze the impact on the downstream sanitary sewer capacity.
On August 18, 2000, Paul Bowers, P.E., Town Engineer, issued a letter stating that "The daily
average and peak sewage flows ... will not adversely impact the downstream sewers. The
Interceptor has adequate capacity to accommodate the above flows. Our records do not indicate
that there are any existing backup or overflow problems in the downstream sewers which will
service this project."

8

Negative Declaration -2190 & 222ᴜ ... ehrle Drive
December 17, 2001

In response to the fifty year moratorium entered into by the Town and the U.S. EPA in 1983 for sanitary sewer tap-ins, the Town Board on February 12, 2001 voted to submit a waiver application to the U.S. EPA to allow a tap-in to the sanitary sewer system for the proposed project. This request is in keeping with the wording of the 1983 moratorium which reserves to the Town Board "the right to appeal this moratorium with respect to actual wetland boundaries on an individual parcel basis".

4.      **Impact on Transportation:** Traffic has been identified as an area of concern by both the Town and by the public during public hearings for the proposed project. The Petitioner has retained the firm of FRA Technology Group (formerly EMS Consulting Engineers) to prepare a Traffic Impact Study (TIS) for the proposed project site and assist the Town and the involved agencies in completing a SEQR review of the project. The TIS, prepared in November, 2000, evaluated the potential traffic impacts of 214,000 square feet of office space on the project site.

In order to analyze the projected traffic of the project relative to other development in the study area, FRA considered the following factors:

- Planned development projects on the existing roadways and intersections in the vicinity of the project site including the Limestone Office Park and Village Park Business Center on the north side of Main Street were considered. FRA also took into consideration planned roadway widening projects in the vicinity of the project site including Wehrle Drive Widening Project, Wehrle Drive at Transit Road and Main Street Widening Project

- Within the "Planned Roadway Improvements" section of the TIS, FRA verified that it is impossible to predict the timing of the roadway improvement projects relative to the development of the project site. However, for purposes of the study, FRA assumed the roadway improvements would take place during Phase III of the development of the project site. This is a reasonable assumption given the ten year anticipated full build-out period.

- An analysis of the available sight distances along both Wehrle Drive and Main Street found that in each instance the sight distances to the east and west are over 1,000 feet and in excess of the minimum sight distance criteria specified by the DOT for driveway entrances.

- Using an estimate that background traffic in the study area would grow at two percent annually, FRA projected the expected project site traffic for each phase combined with existing and expected background growth. FRA analyzed the potential impact of the site generated traffic on the Level of Service ("LOS") at the intersections on major streets in the vicinity.

- A capacity analysis was completed for each of the area intersections based on the procedures set forth in the "Highway Capacity Manual" published by the Transportation Research Board. Phase I of the project would not result in a significant degradation of the existing LOS at any of the intersections. Phase II of the development may have an impact on the LOS at these intersections if completed before the planned roadway improvements.

Negative Declaration -2190 & 2220 wehrle Drive
December 17, 2001

- A traffic signal warrant analysis for the relevant intersections in the study area did not indicate the need for the installation of any traffic signals as a result of the projected traffic from Phase I of the proposed office park. The analysis suggested a potential need for the installation of traffic signals or turning lanes based on the growth in background traffic and the projected site generated traffic. The Petitioner may be required to contribute a proportionate amount towards any improvements deemed necessary by Erie County or the Town of Amherst at a future time.

- The accident analysis showed that the accident rate for Wehrle Drive from Youngs Road to Transit Road was 3.37 accidents per MVMT (million vehicle miles traveled) and that the accident rate for Main Street from Youngs Road to Harding Road was 3.02 accidents per MVMT. Both of these rates were lower than the state wide average of 3.94 accidents per MVMT. FRA concluded that the accident rates would not increase significantly as a result of the project, and that the planned road widening projects on Wehrle Drive and Main Street would reduce the existing accident rates.

The TIS was reviewed by the Erie County Department of Public Works, Division of Highways. A letter signed by Michael J. Asklar, P.E., Traffic Safety Engineer, dated November 16, 2000 states that "The findings of the study are conclusive on the basis of the scope agreed to at the October 12, 2000 meeting for the subject project. We will not request any further analysis...".

It cannot be determined at this time whether development of Phase II or Phase III of the project site will have an impact on the LOS at any of the identified intersections, since the planned roadway improvements relative to both other development in the study areas and the timing of completion of Phases II and III of the project are not certain. However, the Town will require the Petitioner to provide an updated traffic study before approving a site plan(s) for Phases II or III of the project. Erie County has also indicated updated traffic studies may be needed for projects in this vicinity so that potential traffic impacts can be properly monitored.

Since the TIS was submitted to the Town by EMS in November of 2000, a proposal to develop 2360-2370 Wehrle Drive as a business office park ("Arista project") has been submitted to the Town. In November 2001, FRA prepared a TIS for the Arista project. This TIS has been submitted to the Town and Erie County as part of the coordinated review of the project pursuant to SEQR. The TIS for the Arista project took into consideration the proposed development of the project site as a business office park. Erie County reviewed the TIS for the Arista project and the County did not make a finding that the potential traffic impacts of the Arista project would be significant. However, the County did indicate the Project Sponsor of the Arista project may need to contribute towards any mitigation needed as a result of the traffic impacts from the development of the Arista project site. The County has given consideration to the cumulative traffic impacts of proposed development in the vicinity and has not indicated that there is any need for mitigation at this time.

FRA has submitted a letter dated December 14, 2001 stating that the results of the TIS for the proposed project site (2190 and 2220 Wehrle Drive) remain valid. FRA's letter also indicates potential traffic impacts will need to be reviewed as the project site is developed. The Town can require this review as a condition of subsequent site plan approvals.

Negative Declaration -2190 & 2220 Wehrle Drive
December 17, 2001

5,   **Impact on Growth and Character of the Neighborhood**

The project will have a permanent impact on the density of the land use since the project site is currently vacant. The change in density is considered potentially large and not able to be mitigated, yet this impact will be lessened as much as possible by the buffer areas and landscaping requirements previously described. The density will be further mitigated by the requirements in place at the Town and other governmental levels in areas related to drainage, noise, visual impact and traffic.

Although the project will increase the density of development on the project site, the proposed OB zoning is one of the least intensive non-residential zoning classifications. The property at 2220 Wehrle Drive, already zoned OB, is directly adjacent to residential properties; the addition of the smaller parcel at 2190 Wehrle Drive in the OB zone allows a greater degree of flexibility on the land abutting the residences by permitting a greater buffer to those residences. The proposed rezoning of 2190 Wehrle Drive thereby shifts the density farther west to provide greater protection to the existing neighborhood.

**Conclusion/SEQR Determination**

The Town Board of the Town of Amherst, as the Lead Agency for this project, has reviewed and evaluated the evidence submitted regarding this project. The Board has also given proper consideration to the testimony that has been received during the public hearings on the project.

The Town Board makes the following findings in support of its decision that this project will not have a significant adverse impact on the environment:

1.  The Board has evaluated and identified the areas of environmental concern including impact(s) on land, water, transportation and character of the neighborhood. The Board has provided a reasoned elaboration to justify its determination that the projected impacts in these areas will not significantly affect the environment.

2.  The proposed rezoning of 2190 Wehrle Drive from Residential District – Three (R-3) to Office Building (OB) and its development as an office park are consistent with the existing OB zoning on the adjacent parcel to the east at 2220 Wehrle Drive, parcels to the west along Spindrift Drive, and parcels to the north along Limestone Drive; as well as with the Research-Development (RD) and Community Facilities (CF) zoning to the south.

3.  No evidence of cumulative impacts with this action and the proposed office park development at 2360 & 2370 Wehrle Drive has been established. The traffic analysis prepared for this action and for the above-referenced office park accounted for the impact of traffic from vacant land in the Wehrle Drive corridor, including 2360 & 2370 Wehrle Drive. Review by the Erie County Department of Public Works and the Town Traffic/Safety Board agreed with these conclusions. No evidence of cumulative impacts for other issues, such as drainage or sanitary sewerage was identified.

Negative Declaration -2190 & 2220 Wehrle Drive
December 17, 2001

4. The proposed rezoning and subsequent development of an office park meets the intent and objectives of the Comprehensive Plan.

5. The proposed rezoning is consistent with the intent and objectives of the Zoning Ordinance.

6. Facilities and services are or will be available and adequate.

_____   ASST PLAN DIRECTOR  12/21/01
Signature and title of preparer                    Date

_____   12/24/01
Susan Grelick, Town Supervisor                     Date


E:/CurrPlan/SEQR/Neg Decs/Niskayuna

cc:    Town Clerk
       Planning Department
       Building Department
       ECDEP
       Renaldo, Myers & Palumbo, P.C.

12

# Exhibit 7

6.   Facilities and services are or will be available and adequate.

THEREFORE BE IT RESOLVED that the Town Board adopts a Negative Declaration under SEQR Regulations.


Roll Call:
Supervisor Grelick,
aye;
Councilmember Ward,
no;

Deputy Supervisor McGuire,
aye;
Councilmember Brewer,
aye;

Councilmember Woodward,
aye;
Councilmember Wojtowicz,
aye;

Councilmember Kindel,
no;


       Ayes,  5    Noes,  2     Approved

A motion was made by Councilmember Brewer, seconded by Councilmember Woodward, to approve a request from Niskayuna Square, LLC to rezone the property at 2190 Wehrle Drive from R-3 to OB with the following conditions:

1. That the requirements of the Erie County Department of Public Works, as stated in its memorandum of November 16, 2000 be addressed for Phase I (50,000$\tilde{n}$ sq. ft.) of the development of the office park prior to site plan approval for that phase.  Any site plan applications submitted for subsequent phases will be required to provide an updated TIS so that the traffic impact of the proposed office park will be monitored relative to planned road improvements and the impact of other developments in the area.
2. That the heights of buildings and structures be limited to one story and 35 ft. from finished grade on the east side of the proposed subdivision road.

3. That a minimum 50 ft. green space buffer be provided along the east property line of 2220 Wehrle Drive.

4. That the EPA sewer connection moratorium be approved prior to any connections to the sanitary sewer system.

5. That a vehicular connection to the Limestone Office Park from the proposed access road be required when the development extends beyond 800 ft. from Wehrle Drive.

6. No connection east or west on stub streets to or from the development.

Roll Call:
Supervisor Grelick,
aye;
Councilmember Ward,
no;

Deputy Supervisor McGuire,
aye;
Councilmember Brewer,
aye;

Councilmember Woodward,
aye;
Councilmember Wojtowicz,
aye;

Councilmember Kindel,
no;

            Ayes,  5    Noes,  2    Approved

Supervisor Grelick stated that the next matter to come before the Board was a
Public Hearing called for the purpose of hearing all persons interested in a
proposed Open Development Area - "Nottingham Village" patio home development ,
at 200 Renaissance Drive, Marrano/Marc Equity Corp., Petitioner, more
particularly described in a notice duly published in the Amherst Bee calling
this hearing.  Proof of publication of said notice of hearing, received, read
and ordered filed in the Town Clerk's office.

Robert Pidanick, Pratt & Huth Associates, 4950 Genesee Street, representing the
petitioner, gave a presentation.

The following persons addressed the Board:

1. Bruce Wisbaum, Owner/Manager, Renaissance Place Apartments, spoke in favor.

A motion was made by Councilmember Kindel, seconded by Deputy Supervisor
McGuire, to close the public hearing, adopt a Negative Declaration and approve a
request from Marrano/Marc Equity for Open Development Area at 200 Renaissance
Drive - "Nottingham Village" patio home development.

Roll Call:
Supervisor Grelick,
aye;
Councilmember Ward,
aye;

Deputy Supervisor McGuire,
aye;
Councilmember Brewer,
aye;

Councilmember Woodward,
aye;
Councilmember Wojtowicz,

Exhibit 8

ID:                          JAN 03'02   17:29 No.004 P.03

# TOWN OF AMHERST RESOLUTION

STATE OF NEW YORK
COUNTY OF ERIE

    I, Susan K. Jaros, Town Clerk of the Town of Amherst, Erie County, New York, do hereby certify that at a regular meeting of the Town Board of the aforesaid town, on the 12th day of February, 2001, at the Amherst Municipal Building, 5583 Main Street, Williamsville, New York, the following resolution was adopted, every member present voting therefore, to wit: -

A motion was made by Councilmember Brewer, seconded by Deputy Supervisor McGuire, approve the following:

In keeping with the moratorium written in 1983, that states "we reserve the right to appeal this moratorium with respect to actual wetland boundaries on an individual parcel basis" that this Town Board request a waiver for the tap-in at 2190 and 2220 Wehrle Drive for Niskayuna Square.

| Roll Call: | Supervisor Grelick, | no; | Councilmember Ward, | no; |
|---|---|---|---|---|
| | Deputy Supervisor McGuire, | aye; | Councilmember Brewer, | aye; |
| | Councilmember Woodward, | aye; | Councilmember Wojtowicz, | aye; |
| | Councilmember Kindel, | no; | | |

    Ayes, 4   Noes, 3   Approved

I do further certify that I have compared the foregoing with the original minutes of the regular meeting of the Town Board of the said Town held on the 12th day of February, 2001, and that the foregoing is a true and correct transcript from said original minutes and the whole thereof, and that the resolutions duly adopted by the said Town Board are on file in my office.

    I do further certify that the following members of the Town Board were present at such meeting, namely,

Susan J. Grelick     Supervisor
Michael G. McGuire     Deputy Supervisor
Councilmembers
Jane S. Woodward   William L. Kindel   Daniel Ward   Bob Brewer   Richard A. Wojtowicz
Absent:

being all the persons constituting said Town Board of the Town of Amherst, Erie County, New York.
    IN WITNESS WHEREOF, I have hereunto set my hand and the seal of the said Town of Amherst, Erie County, New York, this 14th day of February, 2001.

    Susan K. Jaros, Town Clerk
    Town of Amherst, N.Y.