UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ACQUEST WEHRLE LLC,

                              Plaintiff,

              -vs-                                          06-CV-654C(SR)

UNITED STATES OF AMERICA,
UNITED STATES ENVIRONMENTAL PROTECTION
AGENCY,
UNITED STATES ARMY CORPS OF ENGINEERS,
TOWN OF AMHERST, NEW YORK,
THOMAS and ANN SUCHYNA,
THOMAS and SHIRLEY GALANES,
GEORGE and DOROTHY MARTIN, and
ROBERT and ABIGAIL WESOLOWSKI,

                              Defendants.

_____

        In this action brought pursuant to the Administrative Procedure Act ("APA"), 5

U.S.C. §§ 701-06, plaintiff Acquest Wehrle LLC seeks a determination that its real property

located at 2190 and 2220 Wehrle Drive in the Town of Amherst, New York, is exempt from

the wetlands regulation provisions of the Clean Water Act ("CWA"), 42 U.S.C. § 1344, *et

seq.*  Defendants United States of America, United States Environmental Protection

Agency ("EPA"), and United States Army Corps of Engineers (the "Corps") (collectively, the

"Federal Defendants") have moved to dismiss the complaint pursuant to Rules 12(b)(1) and

12(b)(6) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction and

failure to state a claim upon which relief can be granted, and plaintiff has moved pursuant

to Fed. R. Civ. P. 15 for leave to amend the complaint.

For the reasons that follow, the Federal Defendants' motion to dismiss is granted, and the complaint is dismissed as against them. Plaintiff's motion to amend the complaint is denied.

## BACKGROUND

The factual background of the dispute forming the basis for this action is set forth in the parties' memoranda and affidavits submitted in connection with the pending motion to dismiss, with reliance on matters referenced in numerous exhibits attached to the pleadings. As these submissions reveal, the facts are largely a matter of historical public record, and as such are not substantially disputed.[1]

In 1983, the EPA approved a $5.8 million grant to the Town of Amherst to assist in the construction of a sewer project known as the Southeast Amherst Interceptor and Collector Sewer Project ("the Sewer Project Grant"). One of the conditions of the Sewer Project Grant was a "Moratorium Agreement" which provided that, for a period of fifty years, the Town would not allow any development on property "located wholly or partially within state or federal designated wetlands" to hook up to the sewer project funded by the grant, without the EPA's written approval (Item 1, Ex. 1). In connection with the grant, the EPA prepared an environmental assessment, in which it specifically identified three

---

[1]Of course, when deciding a motion to dismiss, whether for lack of subject matter jurisdiction or for failure to state a claim upon which relief can be granted, the court may typically consider the factual allegations in the complaint, which are accepted as true; documents attached to the complaint as exhibits or incorporated in it by reference; matters of which judicial notice may be taken (such as matters of public record); and documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit. *See, e.g., United States v. International Longshoremen's Ass'n*, 518 F. Supp. 2d 422, 451-52 (E.D.N.Y. 2007); *Cantor v. American Banknote Corp.*, 2007 WL 3084966, at *3-*4 (S.D.N.Y. October 22, 2007) (citing *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998)).

wetland areas within the area covered by the project, including approximately nine acres of wetlands on the property located at 2190 and 2220 Wehrle Drive (*id.* at ¶ 18 & Ex. 2).

In 1995, the former owner of the 2220 Wehrle Drive property, GBC, Inc., petitioned the Town of Amherst Town Board  to rezone that parcel from R-3 (residential) to OB (office building) in order to develop an office park with approximately 175,000 square feet of office building space.  The GBC petition was granted by Resolution adopted on December 4, 1995 (*id.* at ¶ 25 & Ex. 4).  Subsequently, Acquest purchased both the 2190 and 2220 Wehrle Drive parcels for the purpose of assisting in the development of the office park. The purchase was completed in 2005 (*id.* at ¶ 26).

In connection with the proposed development of the office park, Acquest applied to the Corps for a permit to place fill in the wetlands area of the Wehrle Drive property.  By letter dated June 29, 2001, the Corps made the determination that the wetlands identified on the property were "isolated, non-navigable, intrastate waters" not subject to regulation under the permit requirements of section 404 of the CWA (*id*. at ¶ 27 & Ex. 5).  Following this determination, Acquest petitioned the Town Board to rezone the 2190 Wehrle Drive portion of the Wehrle Drive property from R-3 to OB for the purpose of developing an office park consisting of approximately 10 buildings and 1,000 parking spaces.  The Town Board granted the petition and approved Acquest's site plan for the office park, subject to certain conditions including obtaining a waiver from the EPA for a sewer tap-in, and a section 404 permit from the Corps.  The Town Board also adopted a "SEQR Negative Declaration Notice of Determination and Non-Significance" declaring that the proposed rezoning and development "will not have a significant adverse effect on the environment" (*id.* at ¶ 30 & Ex. 6).

Meanwhile, in November 2001, individual defendants Thomas and Ann Suchyna, Thomas and Shirley Galanes, George and Dorothy Martin, and Robert and Abigail Wesolowski brought an action in this court against the Corps pursuant to the citizen suit provisions of the CWA seeking to overturn the determination that the wetlands on the Wehrle Drive property were not subject to federal regulation (*see Suchyna, et al. v. United States Army Corps of Engineers, et al.*, No. 01-CV-763-WMS).[2]  On June 24, 2002, United States District Court Judge William M. Skretny granted the government's consent motion to vacate the Corps' jurisdictional determination and remand the issue for reconsideration, and the action was dismissed (*see id.*, Items 23 & 24).  As a result, on November 21, 2002, the EPA issued a "Jurisdictional Determination and Special Case Designation for Wetlands and Aquatic Areas at 2220 Wehrle Drive, Amherst, New York," which contained the following statement:

> Field investigation done by the Corps and EPA in July 2002 showed that a large wetland of approximately 9.5 acres exists on the project site.  EPA concludes that this wetland delineation is accurate.  EPA has determined that this wetland is subject to jurisdiction under the Clean Water Act (CWA) because it has a surface hydrological connection through a watercourse originating in the wetland, through ditches and a culvert into Ellicott Creek, to the Niagara River, a traditional navigable water.  Further the wetland can be considered to be adjacent to Town Ditch 18 and subject to CWA jurisdiction on this basis as well.  Based on these conclusions, EPA has determined that there are approximately 9.5 acres of CWA jurisdictional wetlands on the parcel at 2220 Wehrle Drive.

(Item 1,  Ex. 11, p. 2).

---

[2]These individual defendants are all members (or former members) of a group called "NOSAW" (Neighbors Organized To Save Amherst's Wetlands), an unincorporated association formed to act as a "citizen watchdog" over Acquest's compliance with the wetlands regulation provisions of the CWA. NOSAW and its current members have filed another citizen suit with this court, *NOSAW v. Acquest Wehrle, LLC*, No. 07-CV-297-JTC, seeking to prevent Acquest from causing any further disruption of the Wehrle Drive wetlands.

Following this determination, Acquest submitted to the EPA a revised site plan for the office park in which it proposed to mitigate the potential effect on the identified wetlands.  By letter dated June 28, 2005, the EPA informed the Town Board that it would accept a waiver request from the Town for a sewer tap-in based upon Acquest's revisions to the site plan, subject to additional mitigation through the creation of off-site wetlands, as determined through the CWA permitting process (*id.* at ¶¶ 41-43 & Ex. 12).

By letter dated March 14, 2006, the Corps transmitted to Acquest a "Provisional Department of the Army Permit" to place fill in approximately 2.9 acres of wetlands on the Wehrle Drive property (*id.* at ¶ 44 & Ex. 13).  As explained in the transmittal letter:

> The provisional permit is **NOT VALID and does <u>not</u> authorize you to do your work.**  The provisional permit describes the work that will be authorized, and the General and Specific Conditions that will be placed on your final Department of the Army (DA) permit if the State of New York requirements are satisfied as described below.  **No work is to be performed in the waterway or any wetlands until you have received a validated copy of the DA permit.**

(*Id.* at ¶ 13).  The letter went on to explain that the final permit would not be issued until the New York State Department of Environmental Conservation issued a "Section 401 Water Quality Certification (WQC)," and that if the State did not act on water quality certification by July 27, 2006, the requirement would be waived (*id.*).

By letter dated July 19, 2006, the Corps notified Acquest that it had conducted an inspection of the Wehrle Drive property on July 13, 2006, which revealed that Acquest had performed "mechanized landclearing resulting in an unauthorized discharge of fill material and impacts to an area previously determined by the [EPA] to be Federal wetlands regulated under Section 404 of the Clean Water Act" (Hostetler Decl., Ex. 3) (Item 15,

Attachment 5).  As a result, the Corps rescinded the provisional permit, withdrew Acquest's

DA permit application, and referred the matter to the EPA for potential enforcement action

(*id.*; Item 1, ¶ 49).

By letter dated May 25, 2007, the EPA notified Acquest that it had inspected the

property on January 18, 2007 and observed that no less than 7 acres of the site had been

completely cleared of all woody and herbaceous vegetation, "including in excess of 3.5

acres of clearing within jurisdictional wetlands" (Hostetler Decl., Ex. 4) (Item 15, Att. 6).

As a result, the EPA issued an administrative compliance order to Acquest pursuant to its

authority under section 309(a) of the CWA (33 U.S.C. § 1319(a)), requiring Acquest

(among other things) to cease discharges of dredged or fill material into the wetlands on

the Wehrle Drive property, and to restore portions of the wetlands affected by fill activity

(*id*).

Meanwhile, Acquest filed this action on September 29, 2006, against the Federal

Defendants, the Town of Amherst, and the "Wetlands Plaintiffs" (*i.e.*, the Suchynas,

Galaneses, Wesolowskis, and Martins),[3] claiming that both the EPA's November 2002

"Jurisdictional Determination" (First Cause of Action) and the Corps' July 2006 rescission

of the provisional permit (Fourth Cause of Action) were arbitrary, capricious, an abuse of

discretion, and not in accordance with law, in violation of the APA.  Acquest also claims

that the 1983 Moratorium Agreement between the EPA and the Town of Amherst was

entered in violation of unspecified provisions of the CWA and section 261 of the Town Law

---

[3]The Suchynas, Galaneses, and  Wesolowskis filed a joint answer (Item 8) asserting several defenses to the claims alleged in the complaint, as well as a denial of knowledge or information as to the residency of George and Dorothy Martin.  The Martins have not filed an answer or otherwise appeared in this action.

of the State of New York, resulting in a "taking" of the Wehrle Drive property without just compensation in violation of the federal and state Constitutions (Second and Third Causes of Action).[4]

Upon being advised by counsel that initial settlement negotiations had been productive, the court granted a joint motion on behalf of plaintiff and the Federal Defendants to stay further proceedings in order to allow counsel to further pursue amicable resolution of the issues raised in the complaint (*see* Items 11 & 12).  When no settlement was forthcoming, the Federal Defendants moved to dismiss the complaint on the following grounds:

1. The court lacks subject matter jurisdiction over Acquest's First Cause of Action because the EPA's November 2002 "Jurisdictional Determination" is not a "final agency action" subject to APA review, and because judicial review of pre-enforcement administrative actions is precluded under the CWA.

2. The court lacks subject matter jurisdiction over Acquest's  Fourth Cause of Action because the Corps' July 2006 action rescinding the provisional permit does not constitute a "final agency action" subject to APA review.

3. The court lacks subject matter jurisdiction over Acquest's "takings" claims set forth in the Second and Third Causes of Action because Acquest is seeking

---

[4]The Town of Amherst answered the complaint and asserted a cross-claim against the Federal Defendants for indemnity or contribution for any liability it may have to Acquest for an alleged taking (*see* Item 7, ¶ 7).  In their motion to dismiss, the Federal Defendants also seek dismissal of the Town's cross-claim for lack of subject matter jurisdiction based upon absence of any waiver of sovereign immunity that would allow the Town to assert an indemnity or contribution claim against the United States (*see* Item 15, Attachment 1, pp. 24-25).  The Town has not filed a response to the Federal Defendants' motion, and thereby has waived any opposition to it.

compensation in excess of the Court's $10,000 jurisdictional limitation under the "Little Tucker Act," 28 U.S.C. § 1346(a)(2).

4.     The Second Cause of Action seeking declaratory relief with respect to the 1983 Moratorium Agreement is barred by the applicable statute of limitations at 28 U.S.C. § 2401, and as such fails to state a claim upon which relief can be granted.

(*See generally* Item 15, Att. 1).

The court set a briefing and argument schedule, which was extended several times upon the parties' consent to accommodate substitution of plaintiff's counsel.   On November 30, 2007 (two business days before the rescheduled oral argument date), the court received a letter from plaintiff's new counsel advising that plaintiff had agreed to withdraw its First, Second, and Fourth causes of action against the Federal Defendants, and was evaluating its options with respect to the third cause of action.   Based on these representations, the court granted counsel's joint request for adjournment of the argument to allow the parties time to prepare and submit the appropriate documentation in this regard (*see* Item 28).

Subsequently, plaintiff filed its motion to amend, and submitted a proposed amended complaint containing eight "Counts," two against the Federal Defendants and six against the Town of Amherst and/or the individual Wetlands Plaintiffs.   The Federal Defendants oppose the motion on the ground that the two Counts alleged against them in the proposed amended complaint are based upon the very same APA claims that plaintiff previously agreed to withdraw, and which are in any event subject to dismissal for the reasons outlined above.

-8-

## DISCUSSION

I.    **Statutory Background**

A.    **The Clean Water Act**

The CWA is a comprehensive statute designed "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters . . . ."  33 U.S.C. § 1251(a). Section 301(a) of the CWA prohibits the "discharge of any pollutant by any person" into waters of the United States except as provisions of the Act specifically allow. 33 U.S.C. § 1311(a).  The current regulations enacted by the EPA and the Corps define the term "waters of the United States" to include "[w]etlands adjacent to" "waters which are currently used, or were used in the past, or may be susceptible to use in interstate or foreign commerce" traditionally within the definition.   33 C.F.R. § 328.3(a)(1), (7). "Wetlands" are further defined as "areas that are inundated or saturated by surface or ground water at a frequency and duration sufficient to support, and that under normal circumstances do support, a prevalence of vegetation typically adapted for life in saturated soil conditions.  Wetlands generally include swamps, marshes, bogs, and similar areas." 33 C.F.R. § 328.3(b).  "Adjacent" means "bordering, contiguous, or neighboring. Wetlands separated from other waters of the United States by man-made dikes or barriers, natural river berms, beach dunes and the like are 'adjacent wetlands.'"  33 C.F.R. § 328.3(c); *see Simsbury-Avon Preservation Soc., LLC v. Metacon Gun Club, Inc.*, 472 F. Supp. 2d 219, 224 (D.Conn. 2007).[5]

---

[5]*Rapanos v. United States*, 547 U.S. 715 (2006), represents the Supreme Court's latest attempt to construe the phrase "waters of the United States" as used in the CWA, and as applied to the EPA's and the Corps' regulation of wetlands.  *Rapanos* involved two consolidated cases in which the Sixth Circuit Court of Appeals had concluded that the CWA applied to the property owners' attempts to place fill material into wetlands adjacent to nonnavigable tributaries of traditional navigable waters.  The Supreme

The permitting authority pertinent to the issues in this case is found at section 404(a), which authorizes the Secretary of the Army, acting through the Corps, to "issue permits . . . for the discharge of dredged or fill material into the navigable waters at specified disposal sites . . . ." 33 U.S.C. § 1344(a).[6]  Pursuant to this authority, the Corps has promulgated regulations governing the section 404 permit application process. *See generally*, 33 C.F.R. pts. 320, 323, 325.   In general, permit applications are subject to a public interest review by the Corps, which examines a host of environmental and other considerations, 33 C.F.R. § 320.4(a), and includes an opportunity for public comment.  33 C.F.R. § 325.3.  In addition, the CWA requires an applicant seeking a section 404 permit to "provide . . . a certification from the State in which the discharge originates or will originate" that the discharge will comply with certain CWA provisions.   33 U.S.C. § 1341(a)(1).  States may condition certification upon "any limitations necessary to ensure compliance with state water quality standards or any other 'appropriate requirement of

---

Court reached a split decision.  While all of the Justices agreed that the term "waters of the United States" encompasses some waters that are not navigable in the traditional sense, *see id.* at 730-31 (plurality opinion); 767-68 (Kennedy, J., concurring in the judgment); 792 (Stevens, J., dissenting), the Court split with respect to the proper standard for determining whether a wetland constitutes "navigable waters" covered by the CWA.  Four Justices interpreted the term "waters of the United States" as covering "relatively permanent, standing or continuously flowing bodies of water," *id.* at 739 (plurality opinion), that are connected to traditional navigable waters, as well as wetlands with a continuous surface connection to such water bodies.  *Id.* at 742.  Justice Kennedy interpreted the term to encompass wetlands that "possess a 'significant nexus' to waters that are or were navigable in fact or that could reasonably be so made."  *Id.* at 759 (Kennedy, J., concurring in the judgment); see *id.* at 780 (wetlands "possess the requisite nexus" if the wetlands "either alone or in combination with similarly situated lands in the region, significantly affect the chemical, physical, and biological integrity of other covered waters more readily understood as 'navigable'").  The four dissenting Justices concluded that the term "waters of the United States" encompasses wetlands that satisfy either the plurality's standard or that of Justice Kennedy.  See *id.* at 810 & n.14 (Stevens, J., dissenting).

   [6]The section 404 permit program, which applies to dredged or fill material, is distinct from the National Pollutant Discharge Elimination System ("NPDES") permit program under § 402 of the CWA, which applies to the discharge of pollutants from industrial or municipal sources.  *See* 33 U.S.C. § 1342.

State law,'" *PUD No. 1 of Jefferson County v. Washington Dep't of Ecology*, 511 U.S. 700, 713-14 (1994) (quoting 33 U.S.C. § 1341(d)), or they may waive their section 401 authority, either affirmatively or involuntarily.  *See* 33 U.S.C. § 1341(a)(1).

Congress delegated the authority for enforcement of CWA sections 301 and 404 jointly to both EPA and the Corps, and gave both agencies a range of enforcement tools. *See* 33 U.S.C. § 1319.  For example, the Corps can issue administrative cease and desist orders to violators, 33 C.F.R. § 326.3(c)(1), and EPA can issue administrative compliance orders, 33 U.S.C. § 1319(a).  Both agencies can also bring civil enforcement actions in federal court against violators pursuant to CWA section 309.  33 U.S.C. §§ 1319(b), 1344(s).[7]

### B.    The Administrative Procedure Act

The APA provides the procedural framework for private suits challenging determinations made by federal agencies–including administrative decisions made under the authority of the Clean Water Act–where the party has "suffered legal wrong" as the result of "final agency action."  5 U.S.C. §§ 702, 704; *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882-83 (1990); *Southeast Alaska Conservation Council v. United States Army Corps of Engineers*, 486 F.3d 638, 643 (9th Cir. 2007).  The APA's explicit requirement that the agency action be "final" before the claim for review can be brought in federal court is jurisdictional, and serves several functions.  For example:

---

[7]In January 1989, the Corps and EPA signed a Memorandum of Agreement on Enforcement to promote cooperation and avoid duplication of effort (Item 15, Hostetler Decl., Ex. 1).  Under this agreement, EPA generally acts as the lead enforcement agency on unpermitted discharges that meet certain criteria.  The Corps generally acts as the lead enforcement agency with respect to other unpermitted discharges and for violations of Corps-issued permit conditions (*id*).

It allows the agency an opportunity to apply its expertise and correct its mistakes, it avoids disrupting the agency's processes, and it relieves the courts from having to engage in "piecemeal review which is at the least inefficient and upon completion of the agency process might prove to have been unnecessary."

*DRG Funding Corp. v. Secretary of Housing and Urban Development*, 76 F.3d 1212, 1214 (D.C.Cir. 1996) (quoting *FTC v. Standard Oil Co. of California*, 449 U.S. 232, 242 (1980)); *see also Air Espana v. Brien*, 165 F.3d 148, 152 (2d Cir. 1999).

In addition, while providing a general cause of action in favor of persons "adversely affected or aggrieved by agency action within the meaning of a relevant statute," 5 U.S.C. § 702, the APA "withdraws that cause of action to the extent the relevant statute 'preclude[s] judicial review . . . .'" *Block v. Community Nutrition Institute*, 467 U.S. 340, 345 (1984) (quoting 5 U.S.C. § 701(a)(1)). "Whether and to what extent a particular statute precludes judicial review is determined not only from its express language, but also from the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved." *Id.*

## C.    The Tucker Act

The Tucker Act, 28 U.S.C. § 1491, authorizes certain actions for monetary relief against the United States, including "actions to recover illegal exactions of money," *Martinez v. United States*, 333 F.3d 1295, 1302 (Fed. Cir. 2003), to be brought in the Court of Federal Claims, while the so-called "Little Tucker Act," 28 U.S.C. § 1346, provides concurrent district court jurisdiction over monetary claims against the United States where the amount sought does not exceed $10,000.  Both statutes "waive[ ] sovereign immunity

[for] . . . actions brought pursuant to money-mandating constitutional provisions, statutes, regulations, or executive orders."  *Martinez*, 333 F.3d at 1302-03 (citations omitted).

## II.      Motion to Dismiss

### A.      Lack of Subject Matter Jurisdiction:  First Cause of Action

In its First Cause of Action, Acquest claims that the EPA's November 2002 "Jurisdictional Determination and Special Case Designation for Wetlands and Aquatic Areas at 2220 Wehrle Drive, Amherst, New York" should be vacated as arbitrary, capricious, an abuse of discretion, and not in accordance with law.   The Federal Defendants move to dismiss this claim because the challenged wetlands designation is not a "final agency action" subject to APA review, and because judicial review of this type of pre-enforcement administrative action is precluded under the CWA.

In *Bennett v. Spear*, 520 U.S. 154 (1997), the Supreme Court established two conditions which must be satisfied for agency action to be considered "final" for the purpose of APA review:  (1) "the action must mark the consummation of the agency's decisionmaking process"; and (2) "the action must be one by which rights or obligations have been determined, or from which legal consequences will flow."   *Id*. at 177-78 (citations and internal quotation marks omitted); *see also Franklin v. Massachusetts*, 505 U.S. 788, 797 (1992) ("The core question is whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties."); *Top Choice Distributors, Inc. v. United States Postal Service*, 138 F.3d 463, 466 (2d Cir. 1998).

In this case, it is clear that the federal agencies' action falls short of these finality requirements. First of all, there can be no doubt that the EPA's November 2002 jurisdictional determination did not mark the consummation of the agency's decisionmaking process with respect to the Wehrle Drive property. Indeed, the federal courts have repeatedly confirmed that the assertion of CWA regulatory jurisdiction over wetlands is not a "final" agency action under the APA. *See Greater Gulfport Properties, LLC v. Corps*, 194 Fed.Appx. 250, 2006 WL 2460884 at *1 (5th Cir. 2006) (district court lacked subject matter jurisdiction to review Corps' pre-enforcement jurisdictional determination); *Comm'rs of Pub. Works of City of Charleston v. United States*, 30 F.3d 129 (4th Cir. 1994) (pre-enforcement judicial review of Corps' jurisdictional wetlands determination not available); *St. Andrews Park, Inc. v. United States Dep't of the Army Corps of Eng'rs*, 314 F. Supp. 2d 1238, 1244-45 (S.D.Fla. 2004) (determination that a wetland is subject to the Clean Water Act is not a final agency action).

Similarly, no rights or obligations were determined by the EPA's assertion of regulatory jurisdiction in November 2002. "To the contrary, the legal rights and obligations of the parties were precisely the same the day after the jurisdictional determination was issued as they were the day before." *St. Andrews Park*, 314 F. Supp. 2d 1238, 1245 (S.D. Fla. 2004) (citation omitted).

Moreover, several courts have held that the CWA precludes judicial review of pre-enforcement administrative actions, including the issuance of an administrative compliance order. *See, e.g., Laguna Gatuna, Inc. v. Browner*, 58 F.3d 564, 565-66 (10th Cir. 1995) (holding CWA did not provide for judicial review of EPA compliance order); *Southern Ohio*

-14-

*Coal Co. v. Office of Surface Mining*, 20 F.3d 1418, 1425-28 (6th Cir. 1994) (same); *Reuth v. EPA*, 13 F.3d 227, 229- 30 (7th Cir. 1993) (holding challenge to government's right to assert jurisdiction over wetlands in proposed development could not be brought unless government initiates judicial enforcement action); *Southern Pines Assocs. v. United States*, 912 F.2d 713, 715-17 (4th Cir. 1990) (holding review of compliance orders issued under CWA were precluded until judicial enforcement action commenced); *Hoffman Group, Inc. v. EPA*, 902 F.2d 567, 569 (7th Cir. 1990) (same).  As stated by the Fourth Circuit in *Comm'rs of Pub. Works of City of Charleston*:

> . . . Congress intended that government agencies charged with enforcing the CWA be able to act to address environmental problems quickly and without becoming immediately entangled in litigation.  To make such action possible, the CWA limited opportunities for judicial review to situations where agency enforcement proceedings had become final, enforceable agency orders.

1994 WL 399118, at *1 (internal quotation marks and citation omitted).

        In this case, the historical facts outlined above reveal that the federal agency proceedings with regard to the Wehrle Drive property have not progressed beyond the pre-enforcement stage.  Based on the holdings in the cases outlined above, the conclusion is inescapable that neither the EPA's November 2002 jurisdictional determination nor the EPA's May 2007 compliance order constitutes a final agency action subject to judicial review under the APA, and that in any event, judicial review of the November 2002 determination is precluded by the CWA.

        Accordingly, plaintiff's First Cause of Action must be dismissed for lack of subject matter jurisdiction.

**B.      Lack of Subject Matter Jurisdiction:  Fourth Cause of Action**

In its Fourth Cause of Action, Acquest seeks relief under the APA with respect to the Corps' July 2006 rescission of the provisional permit.  The federal defendants move to dismiss this claim as well for lack of subject matter jurisdiction.

Like the EPA's November 2002 jurisdictional determination, the Corps' July 2006 determination to rescind Acquest's provisional permit does not constitute a final agency action subject to APA review.  To reiterate, the provisional permit issued in March 2006 contained explicit language clearly prohibiting any work on the Wehrle Drive site which would have an impact on the designated wetland areas until a final permit could be issued. In July 2006, before taking final action on the permit application, the Corps conducted an inspection of the Wehrle Drive property, which revealed that Acquest had performed work on the site which resulted in an unauthorized discharge of fill material into the designated wetland areas.  Based on this unauthorized activity, the Corps notified Acquest that it was rescinding the provisional permit and submitting the matter to EPA for potential enforcement action.   EPA later conducted its own inspection of the property, which confirmed the unpermitted discharge of fill material and resulted in the issuance of an administrative compliance order.

Because the provisional permit did not authorize any work or otherwise determine any rights or obligations in favor of Acquest with respect to the Wehrle Drive property, the Corps' rescission of the provisional permit likewise could not be considered to have determined any rights or obligations.  Acquest was in exactly the same legal position after

the provisional permit was rescinded as it had been in before:  it lacked authorization from the Corps to discharge fill material into the designated wetlands on the site.

Accordingly, the court concludes that the Corps' July 2006 rescission of the provisional permit did not constitute final agency action subject to judicial review under the APA, and plaintiff's Fourth Cause of Action is dismissed for lack of subject matter jurisdiction.

### C.  Lack of Subject Matter Jurisdiction:  Second and Third Causes of Action

In its Second and Third Causes of Action, Acquest seeks an order declaring that the Moratorium Agreement entered into by the EPA and the Town of Amherst in 1983 was void and unenforceable, and resulted in a taking of the Wehrle Drive property without just compensation in violation of the due process clause of the Constitution.  Acquest seeks the amount of $5.6 million as fair market value compensation for the alleged takings.

This claim for compensation is in excess of the $10,000 jurisdictional limitation of the "Little Tucker Act," 28 U.S.C. § 1346(a)(2).  Pursuant to the Tucker Act, 28 U.S.C. § 1491(a)(1), jurisdiction over Acquest's takings claims lies exclusively with the United States Court of Federal Claims.

Accordingly, both the Second and Third Causes of Action must be dismissed for lack of subject matter jurisdiction.  *See Adeleke v. United States*, 355 F.3d 144, 151-52 (2d Cir. 2004).[8]

---

[8]Having found that it lacks subject matter jurisdiction over the Second Cause of Action as it relates to plaintiff's "taking" claim, the court need not address the Federal Defendants' argument that this Cause of Action is also barred by the applicable statute of limitations.

III.    **Motion to Amend**

Rule 15(a) of the Federal Rules of Civil Procedure provides that "[t]he court should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  However, the court may deny leave to amend where the amendment would be futile–for instance, where the amendment would be subject to dismissal for lack of subject matter jurisdiction. *See, e.g., Latino Quimica-Amtex S.A. v. Akzo Nobel Chemicals B.V.*, 2005 WL 2207017 (S.D.N.Y. September 8, 2005).

This court's review of plaintiff's proposed amended complaint reveals that the two Counts alleged against the Federal Defendants, while couched in slightly different language, are identical in substance to the claims alleged in the original complaint.  For example, in the first count of the proposed amended complaint, Acquest alleges that the EPA's November 2002 jurisdictional determination, as "confirmed" by the May 2007 "Enforcement Order"  was unlawful, arbitrary, capricious, and in excess of EPA authority, in violation of the APA, resulting in a wrongful taking of property without compensation (*see* Item 30, Att. 2, ¶¶ 51-56).  In the Second Count, Acquest alleges that the Corps' July 2006 rescission of the Provisional Permit was arbitrary, capricious, an abuse of discretion, and not in accordance with existing law (*id.* at ¶¶ 58-60).

As the discussion above amply demonstrates, none of these administrative determinations constitutes final agency action subject to APA review, and while plaintiff was careful not to specify the amount sought by virtue of the revised "taking" claim, it is clear from the parties' prior pleadings and submissions that plaintiff seeks compensation

above this court's $10,000 jurisdictional limit for monetary claims against agencies of the United States.

Accordingly, the court lacks subject matter jurisdiction over these claims against the Federal Defendants, just as it does with respect to the claims alleged in the original complaint, and amendment in this regard would be futile.  Plaintiff's motion for leave to amend the complaint in order to replead the claims against the Federal Defendants is therefore denied.

The remaining defendants–the Town of Amherst and the individuals–have not responded to the motion to amend, and have not sought relief from the court with respect to the claims alleged against them in either the original or proposed amended complaints. Accordingly, the court takes no action regarding the status of the pleadings, or otherwise with respect to the dispute between those parties, at this time.

## CONCLUSION

Based on the foregoing, the Federal Defendants' motion to dismiss (Item 15) is granted, and plaintiff's motion for leave to amend (Item 30) is denied. The case is dismissed against defendants United States of America, United States Environmental Protection Agency, and United States Army Corps of Engineers.

A telephone conference call with counsel for the remaining parties will be held with the court on July 15, 2008, at 10:45 a.m. to discuss a schedule for further proceedings in this matter.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated:   June 19                    , 2008
p:\pending\2006\06-654.may19.08