UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ACQUEST WEHRLE LLC,

                Plaintiff,

       -vs-                                        06-CV-654-JTC(SR)

UNITED STATES OF AMERICA,
UNITED STATES ENVIRONMENTAL PROTECTION
AGENCY,
UNITED STATES ARMY CORPS OF ENGINEERS,
TOWN OF AMHERST, NEW YORK,
THOMAS and ANN SUCHYNA,
THOMAS and SHIRLEY GALANES,
GEORGE and DOROTHY MARTIN, and
ROBERT and ABIGAIL WESOLOWSKI,

                Defendants.

---

Plaintiff Acquest Wehrle LLC brought this action against the United States of America, the United States Environmental Protection Agency ("EPA"), and the United States Army Corps of Engineers (the "Army Corps") (collectively, the "Federal Defendants"), pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-06, seeking a determination that its real property located at 2190 and 2220 Wehrle Drive in the Town of Amherst, New York, is exempt from the wetlands regulation provisions of the Clean Water Act ("CWA"), 42 U.S.C. § 1344, *et seq.* Plaintiff also sued the Town of Amherst, New York, seeking a judgment declaring that a 50-year sewer moratorium agreement entered in 1983 between the Town and the EPA (the "1983 Moratorium

Agreement") has resulted in an unconstitutional taking of property without just compensation.[1]

On June 20, 2008, this court issued a decision and order (Item 43) dismissing the complaint against the Federal Defendants for lack of subject matter jurisdiction, finding that the EPA's wetlands designation and the Army Corps' rescission of plaintiff's provisional work permit did not constitute final agency action within the meaning of the APA, and that jurisdiction over plaintiff's "takings" claims lies exclusively with the United States Court of Federal Claims pursuant to the Tucker Act, 28 U.S.C. § 1491(a)(1). Subsequently, upon plaintiff's unopposed request, the court issued an order pursuant to Rule 54(b) of the Federal Rules of Civil Procedure directing entry of a separate, final, and appealable judgment on plaintiff's takings claims against the Federal Defendants (Item 67).

Meanwhile, the Town of Amherst filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure seeking dismissal of the complaint against it on the grounds that the claim for declaratory relief with respect to the 1983 Moratorium Agreement is barred by the applicable statute of limitations, and fails to state a claim upon which relief can be granted. The court scheduled oral argument of this motion for November 21, 2008, at which time the parties appeared in court and agreed to a referral of the matter to United States Magistrate Judge H. Kenneth Schroeder, Jr. for a settlement conference. The court has now been advised that the parties have been unable

---

[1] Plaintiff also named Town of Amherst residents Thomas and Ann Suchyna, Thomas and Shirley Galanes, George and Dorothy Martin, and Robert and Abigail Wesolowski as defendants, but has not alleged any specific conduct or activity on the part of these individuals giving rise to a claim under the APA, the Constitution, or any legal theory set forth as a basis for the relief sought by way of this action. Accordingly, the complaint against these individual defendants is dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

to reach a settlement, and the case has been referred back to this court for determination of the Town's motion for judgment on the pleadings (*see* 2/13/09 Minute Entry, Item 80).

For the reasons that follow, the Town's motion is granted, and this action is dismissed.

## **BACKGROUND**

The factual background of this action is set forth at some length in the court's prior decision and order, and will not be reiterated in great detail here. As previously noted, the facts are largely a matter of historical public record, and as such are not substantially in dispute.

Central to the claims remaining in this case, the 1983 Moratorium Agreement was executed in connection with the EPA's approval of a $5.8 million grant to the Town for construction of the Southeast Amherst Interceptor and Collector Sewer Project (the "Sewer Project"). The Moratorium Agreement provided that for a fifty-year period (until 2033), the Town would not allow any developments on property located wholly or partially within state- or federally designated wetlands to hook up to the sewer project funded by the grant, without the EPA's written approval (Item 1, ¶ 17 & Ex. 2). The Town "reserve[d] the right to appeal this moratorium with respect to actual wetland boundaries on an individual parcel basis" (*id.*, Ex. 1).

The property at issue encompasses two contiguous parcels of land totaling approximately twenty-five acres, which were purchased by Acquest Wehrle in connection with the development of an office building park. The proposed development dates back to the early 1990s, and has been the subject of extensive negotiations, investigations, site

plan revisions, Town Board resolutions, prior federal and state court litigation, and other proceedings involving local, state, and federal agencies.

When Acquest Wehrle purchased the larger parcel at 2220 Wehrle Drive in 1998, the property had already been the subject of at least three wetlands delineations and had been rezoned by the Town Board from R-3 (residential) to OB (office building). In 2000, in connection with its purchase of the smaller parcel at 2190 Wehrle Drive, Acquest Wehrle petitioned the Town Board to rezone that parcel from R-3 to OB, and requested that the Town seek a waiver of the sewer tap-in moratorium from the EPA. The Town Board eventually granted the petition and approved Acquest Wehrle's site plan for the office park subject to certain conditions, including EPA approval of the sewer tap-in and the Army Corps' approval of a permit under section 404 of the CWA to place fill in delineated wetland areas of the site. The Town Board also adopted a "Negative Declaration Notice of Determination and Non-Significance" pursuant to the New York State Environmental Quality Review Act ("SEQR"), declaring that the proposed rezoning and development "will not have a significant adverse effect on the environment." (Item 1, Ex. 6.)

On November 21, 2002, the EPA issued a "Jurisdictional Determination and Special Case Designation for Wetlands and Aquatic Areas at 2220 Wehrle Drive, Amherst, New York" which contained the following statement:

> Field investigations done by the . . . Corps and [EPA] in July 2002 showed that a large wetland of approximately 9.5 acres exists on the project site. EPA Region 2 believes that this wetland delineation is accurate. Additionally, EPA Region 2 has determined that this wetland is subject to jurisdiction under the CWA because it has a surface hydrological connection through a watercourse originating in the wetland, through ditches and culvert and into Ellicott Creek, to a traditional navigable water. Further, the wetland can be considered to be adjacent to Town Ditch 18 and subject to CWA jurisdiction on this basis as well.

>   Based on these conclusions, EPA Region 2 has determined that there are approximately 9.5 acres of CWA jurisdictional wetlands on the parcel at 2220 Wehrle Drive.

(Item 1, Ex. 11, p. 2). Subsequently, by letter dated December 21, 2004, the EPA notified the Town that its request for a tap-in waiver had been denied (Item 59, Ex. H). According to this letter, when the EPA funded the Sewer Project construction grant in 1983, the wetlands on the 2220 Wehrle Drive parcel covered approximately 8.8 acres, but the more recent jurisdictional determination indicated that wetlands cover 9.5 acres of the parcel. As stated in the letter:

> During the intervening years, [Acquest Wehrle] has submitted numerous site plans for EPA's review, ranging from no wetlands impact to substantial impact. It is important to note that the proposed site plan that would have resulted in no fill was subsequently withdrawn by [Acquest Wehrle]. Under the most recent site plan presented by Acquest . . . , over 4.75 acres of this wetland would be lost, with 1.75 acres of onsite mitigation, resulting in a net loss of 3.00 acres of wetlands onsite.
>
> [T]he greater portion of the acreage of . . . the 2190 and 2220 Wehrle Drive parcels, which together total 25 acres, are non-wetlands and could be developed without any direct impact to the wetlands. In fact, as noted above, [Acquest Wehrle] has submitted at least one site plan which avoided wetlands impacts completely.

(*Id.*)

Following this determination, and after extensive discussions with the Town, Acquest Wehrle submitted a revised site plan to the EPA and the Town Board for the office park, in which it proposed to mitigate the potential effect on the identified wetlands. By letter dated June 28, 2005, the EPA informed the Town Board that it would accept a waiver request from the Town for a sewer tap-in based upon Acquest Wehrle's revisions to the site plan, subject to additional mitigation through the creation of off-site wetlands, as determined through the CWA permitting process (Item 1 at ¶¶ 41-43 & Ex. 12).

By letter dated March 14, 2006, the Army Corps transmitted to Acquest Wehrle a "Provisional Department of the Army Permit" to place fill in approximately 2.9 acres of wetlands on the Wehrle Drive property (*id.* at ¶ 44 & Ex. 13). As explained in the transmittal letter:

> The provisional permit is **NOT VALID and does not authorize you to do your work.** The provisional permit describes the work that will be authorized, and the General and Specific Conditions that will be placed on your final Department of the Army (DA) permit if the State of New York requirements are satisfied as described below. **No work is to be performed in the waterway or any wetlands until you have received a validated copy of the DA permit.**

(*Id.* at Ex. 13). The letter went on to explain that the final permit would not be issued until the New York State Department of Environmental Conservation issued a "Section 401 Water Quality Certification (WQC)," and that if the state did not act on water quality certification by July 27, 2006, the requirement would be waived (*id.*).

On April 7, 2006, Acquest Wehrle's attorney Louis Fessard wrote a letter to Gary Black, the Town's Assistant Planning Director, requesting that the revised site plan be put on the agenda for the Town Planning Board's April 20, 2006 meeting (*see* Item 59, Ex. M). Mr. Black wrote back that same day, advising that on March 20, 2006, the Town Board adopted a resolution for withdrawal of the request for a tap-in waiver (*id.*, Ex. N). As stated in the resolution:

> [U]pon taking a hard look at the premises and the project, and with due deliberation thereon, including consideration of the wetlands, and a full reconsideration of its actions, the Amherst Town Board now hereby withdraws any request for waiver of said moratorium, and terminates said commercial project.

(*Id.*, Ex. O).

As discussed in this court's June 28, 2008 decision and order, the Army Corps conducted an inspection of the Wehrle Drive property on July 13, 2006, which revealed that Acquest Wehrle had performed "mechanized landclearing resulting in an unauthorized discharge of fill material and impacts to an area previously determined by the [EPA] to be Federal wetlands regulated under Section 404 of the Clean Water Act" (Item 15, Attachment 5). The Army Corps rescinded the provisional permit, withdrew Acquest Wehrle's permit application, and referred the matter to the EPA for potential enforcement action (*id.*; Item 1, ¶ 49). The EPA conducted an inspection of the property on January 18, 2007, and subsequently notified Acquest Wehrle that it had observed land-clearing activity on the site, "including in excess of 3.5 acres of clearing within jurisdictional wetlands" (Item 15, Att. 6, p. 2). As a result, the EPA issued an administrative compliance order to Acquest Wehrle pursuant to its authority under section 309(a) of the CWA (33 U.S.C. § 1319(a)), requiring Acquest Wehrle (among other things) to cease discharges of dredged or fill material into the wetlands on the Wehrle Drive property, and to restore portions of the wetlands affected by fill activity (*id*).

Meanwhile, in September 2006, Acquest Wehrle filed this action seeking declaratory relief with respect to the EPA's November 2002 "Jurisdictional Determination" (First Cause of Action), the 1983 Moratorium Agreement between the EPA and the Town of Amherst (Second and Third Causes of Action), and the Corps' July 2006 rescission of the provisional permit (Fourth Cause of Action). By way of its June 28, 2008 order, the court dismissed all claims against the Federal Defendants for lack of subject matter jurisdiction, leaving intact only the claim against the Town.

The essence of this claim is stated in the complaint as follows:

> The Plaintiff seeks a judgment declaring that the 1983 Moratorium Agreement between the Town of Amherst and the United States Environmental Protection Agency is void and unenforceable because it is contrary to law, deprives Plaintiff due process of law, and deprives Plaintiff the use and benefit of the Wehrle Drive Property without just compensation in violation of the Constitutions and laws of the United States of America and the State of New York.

(Item 1, ¶ 7). Upon review of the matters set forth in the pleadings and the other written submissions on file, the court once again finds that it is without jurisdiction to adjudicate plaintiff's "takings" claim.

## DISCUSSION

The federal courts have long recognized that, for a case or controversy to be deemed justiciable under Article III of the Constitution, it must be "ripe." *Marchi v. Board of Cooperative Educational Services of Albany*, 173 F.3d 469, 478 (2d Cir.), *cert. denied*, 528 U.S. 869 (1999); *see also Country View Estates @ Ridge LLC v. Town of Brookhaven*, 452 F. Supp. 2d 142, 148 (E.D.N.Y. 2006). Because ripeness is a constitutional prerequisite to the exercise of jurisdiction, the court is obliged to consider the ripeness question before reaching the merits of the dispute. *Vandor, Inc. v. Militello*, 301 F.3d 37, 38-39 (2d Cir. 2002).

"In the area of land use, the doctrine of ripeness is intended to avoid premature adjudication of or review of administrative action." *Herrington v. County of Sonoma*, 857 F.2d 567, 568 (9th Cir.1988), *cert. denied*, 489 U.S. 1090 (1989), *quoted in Sunrise Development, Inc. v. Town of Huntington*, 62 F. Supp. 2d 762, 770 (E.D.N.Y. 1999); *see Woodfield Equities, LLC v. The Incorporated Village of Patchogue*, 357 F. Supp. 2d 622,

631 (E.D.N.Y.) ("The ripeness doctrine's basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.") (internal quotation marks and citation omitted), *aff'd*, 156 Fed.Appx. 389 (2d Cir. 2005). Recognizing this principle, the Supreme Court in *Williamson County v. Hamilton Bank*, 473 U.S. 172 (1985), established a two-pronged test for determining whether a regulatory takings claim is ripe. The first prong requires a finding that "the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Id.* at 186. The second prong requires a finding that the landowner challenging the governmental action "has unsuccessfully attempted to obtain just compensation through the procedures provided by the State for obtaining such compensation . . . ." *Id.* at 195.

In this case, plaintiff contends that the resolution adopted by the Town Board at its March 20, 2006 meeting withdrawing its request for a tap-in waiver and terminating the office park project constitutes the Town's final decision regarding the application of the fifty-year moratorium to the Wehrle Drive property. However, as indicated in a letter from plaintiff's counsel dated April 18, 2006 (Item 62 , Ex. 1), plaintiff has proposed a further revised site plan for development and construction of the office park which would have no impact on the regulated wetlands, eliminating the necessity for a tap-in waiver, and the Town has acknowledged that if plaintiff submitted such a plan, it would likely be approved (*see* Item 63, ¶¶ 11, 12). Based on these submissions, the court cannot find that the Town Board's March 20, 2006 resolution is sufficiently "final" to satisfy the first prong of the *Williamson County* ripeness inquiry.

In addition, plaintiff has failed to establish that it has unsuccessfully attempted to obtain just compensation through state procedures. Well-settled law in the Second Circuit establishes that New York provides adequate means for obtaining compensation for a regulatory taking. *See, e.g., Allocco Recycling, Ltd. v. Doherty*, 378 F. Supp. 2d 348, 361 (S.D.N.Y. 2005) (citing cases). While plaintiff's submissions in connection with the Town's pending motion indicate that it has instituted an Article 78 challenge to the Town's purported termination of the project (*see* Item 59, Ex. P), there is nothing presently in the record to indicate whether this resort to the state's procedures has been successful.

Accordingly, plaintiff's takings claim against the Town is not ripe, and the court lacks jurisdiction over the claim. *See Vandor, Inc.*, 301 F.3d at 38; *Island Park, LLC v. CSX Transp., Inc.*, 2007 WL 1851784, at *9 (N.D.N.Y. June 26, 2007).

## **CONCLUSION**

Based upon the foregoing, the court grants the Town of Amherst's motion for judgment on the pleadings (Item 46), and dismisses this action in its entirety.

The Clerk of the Court is directed to enter judgment in favor of all defendants.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated: March  30 , 2009
p:\pending\2006\06-654.mar13.09